Harold Douglas **COPPEDGE** et al.,
Plaintiffs,

**United States of America, by Ramsey
Clark, Attorney General, Plaintiff-
Intervenor,**

v.

The **FRANKLIN COUNTY BOARD OF
EDUCATION** et al., Defendants.

**Civ. No. 1796.**

United States District Court
E. D. North Carolina,
Raleigh Division.

Aug. 22, 1968.

Conrad O. Pearson, Durham, N. C., J. LeVonne Chambers, Charlotte, N. C., for plaintiffs.

Frank E. Schwelb and Francis H. Kennedy, Jr., Dept. of Justice, Civil Rights Division, Washington, D. C., for plaintiff-intervenor.

E. F. Yarborough and W. M. Jolly, Louisburg, N. C., Irvin B. Tucker, Jr., Raleigh, N. C., for defendants.

BUTLER, Chief Judge.

Defendants have applied for a stay pending appeal of this Court's Orders of June 20 and August 5, 1968, requiring them to convert to a unitary non-racial system beginning with the opening of the 1968–69 school year. They claim that various administrative difficulties now make it impossible for them to comply with said Orders, and ask instead that this Court approve a plan which would delay total integration until the commencement of the 1970–71 school year. A hearing having been held, and due consideration having been given to the evidence and arguments of counsel, the Court enters the following Findings of Fact, Conclusions of Law, and Order:

## FINDINGS OF FACT

1. On August 17, 1967, this Court entered an Order herein disapproving Franklin County's freedom of choice plan, providing for certain interim relief for the 1967–68 school year, and directing the defendants to convert to a unitary system of schools, based on unitary geographic attendance zones, school or grade consolidation, or some combination of the above methods, at the earliest practicable date. Coppedge et al. v. Franklin County Board of Education et al., 273 F.Supp. 289 (E.D.N.C.1967).

2. On August 25, 1967, defendants filed a Notice of Appeal to the Court of Appeals for the Fourth Circuit, and on August 29, 1967, they applied to this Court for a stay pending appeal. On August 31, 1967, following a hearing, this Court denied the motion for a stay. This Court further amended its Order of August 17, 1967, to provide that defendants would be required to file their plan for conversion to a unitary system thirty days after March 1, 1968, or thirty days after the decision of the Court of Appeals for the Fourth Circuit in the action, whichever date was earlier.

3. On April 8, 1968, the Court of Appeals for the Fourth Circuit affirmed this Court's Order of August 17, 1967, and on May 31, 1968, said Court denied defendants' petition for a rehearing. The opinion of the Court of Appeals, which is reported in Coppedge et al. v. Franklin County Board of Education, 394 F.2d 410 (4th Cir. 1968) held that the defendants had deprived Negro pupils in Franklin County of their constitutional rights, and was especially critical of the defendants for their lack of progress in faculty desegregation and for their failure to take steps to counteract the intimidation and pressures which had been directed at the families of Negro pupils seeking to attend desegregated schools.

4. On March 28, 1968, the defendants filed a plan of desegregation purporting to comply with this Court's Order directing them to convert to a unitary system "at the earliest practicable date." Defendants' plan contemplated the assignment of 15% of the Negro pupils to previously all-white schools for 1968–69 (an increase of 5% over what this Court ordered for 1967–68) and the assignment of at least two teachers across racial lines to each school in the system (precisely the same level of faculty desegregation which this Court ordered for 1967–68). Further progress under defendants' plan was made contingent upon a proposed bond issue to be submitted to Franklin County voters in October, 1968, after the opening of school.

5. Plaintiffs and Plaintiff-Intervenor filed timely objections to defendants' plan, and plaintiff-intervenor further

filed a motion to implement this Court's Order of August 17, 1967. The papers on behalf of plaintiffs and plaintiff-intervenor made it clear that these parties were taking the position that the commencement of the 1968–69 school year was the "earliest practicable date" within the meaning of this Court's Order of August 17, 1967, and it was apparent to all that this contention was the principal issue between the parties.

6. On May 29, 1968, this Court sent written notice to the parties that a hearing would be held on defendants' plan on June 20, 1968. The Notice, which was signed by this Court, provided that

Counsel are requested to confer prior to the hearing and stipulate all facts not in genuine dispute, *and submit any additional evidence in the form of depositions.*

The defendants failed to take any depositions and submitted no evidence on the issue of administrative difficulties or any other issue.

7. On June 20, 1968, this Court held a hearing on the defendants' plan and the objections thereto. No evidence was offered. Counsel for plaintiff-intervenor argued to the Court that the uncontradicted testimony of plaintiff's expert witness, William Stormer, was that there were no significant administrative difficulties preventing prompt conversion to a unitary system. Defendants made no attempt to counter this argument.

8. On June 20, 1968, following the hearing described in the preceding finding, this Court entered an order which provided that

(1) Defendants' Plan for Assignment of Students and Consolidation of Schools be disapproved, and

(2) On or before July 15, defendants file with the Court a new plan "which shall provide for the implementation of a unitary non-racial school system effective with the beginning of the 1968–69 school year."

This Court also informally directed counsel for all parties to try to agree on a mutually satisfactory plan. Should the parties be unable to agree, counsel for plaintiffs and plaintiff-intervenor were invited to file alternative plans for the Court's consideration.

9. On July 15, 1968, in response to this Court's Order of June 20, 1968, defendants filed a new "Plan for a Unitary Non-Racial System." The new plan provided as follows:

### 1968–69 SCHOOL YEAR

1. Assign to predominantly white schools at least 750 Negro students, including those previously assigned to Youngsville Elementary School and Cedar Street School, which said schools will be closed.

2. Assign 45 teachers to teach across racial lines.

### 1969–70 SCHOOL YEAR

1. Close the high schools (grades 9–12) of Riverside School, Gethsemane School, Perry's School, and Epsom School, and transfer the students of said closed high schools to the high schools (grades 9–12) of Louisburg School, Youngsville School, Bunn School, Edward Best School and Gold Sand School, on a unitary non-racial basis.

2. In the high school (grades 9–12) to be operated during the 1969–70 school year, the faculty of each of said schools shall contain the same approximate percentage of non-white teachers as there is in the then high school system.

### 1970–71 SCHOOL YEAR

1. All students in the schools of the Franklin County Administrative Unit will be assigned to schools upon a unitary non-racial basis.

2. Each faculty shall contain the same approximate percentage of non-white teachers as there is in the entire system.

10. The plan filed by defendants on July 15, 1968, was not in compliance with the letter or spirit of this Court's Order

of June 20, 1968, in that the plan provided that conversion to a unitary system would not be completed until the commencement of the 1970–71 school year, whereas this Court's Order required that such conversion be completed no later than the opening of the 1968–69 school year.

11. On July 15, 1968, plaintiffs and plaintiff-intervenor filed separate proposed orders in compliance with this Court's informal direction to them of June 20, 1968. Each of these proposed orders provided for complete conversion to a unitary system at the beginning of the 1968–69 school year.

11–A. On July 15, 1968, Messrs. Davis and Yarborough, attorneys for the defendants, addressed a letter to this Court containing a resume of certain alleged administrative difficulties preventing complete conversion to a unitary system at the opening of the 1968–69 school year. These alleged difficulties are the same as those now relied on by the defendants. It does not appear that a copy of this letter went to opposing counsel. This letter was not considered as competent evidence.

12. On August 5, 1968, this Court entered the Order which is the subject of the defendants' motion to stay. This Order permanently enjoins the defendants and those in privity with them from failing or refusing to carry out certain steps to totally desegregate the Franklin County school system at the opening of the 1968–69 school year. The defendants are ordered in substance to divide the county into six attendance zones, each corresponding generally to the de facto attendance area of a predominantly white school. The Order provides that, within each attendance zone, the various schools shall be converted into grade centers, so that no two schools within the same zone shall offer the same grades. The question as to which grades shall be assigned to any particular school is left to the discretion of the defendants. The Order further provides that, subject to a non-racial overcrowding provision, all pupils shall attend school in the attendance zone in which they reside. It is further provided that faculty and staff members shall be assigned, so far as possible, to that school in their attendance zone which offers the grades which they teach or with which they are associated. The Order further prohibits racial discrimination in any dismissals which may be occasioned by faculty desegregation.

13. On August 8, 1968, defendants filed notice of appeal to the Court of Appeals for the Fourth Circuit from the Orders of this Court of June 20, 1968, and August 5, 1968; together with their Notice of Appeal, defendants filed an application for a stay pending appeal of the aforesaid orders of this Court. The application for a stay was based on the alleged existence of administrative difficulties which, according to defendants, would make compliance with the orders of June 20 and August 5, 1968, impossible as a practical matter. Counsel for defendants then informally requested Chief Judge Haynsworth of the Court of Appeals for the Fourth Circuit for an early hearing.

14. On August 13, 1968, Chief Judge Haynsworth advised this Court and counsel for defendants and for plaintiff-intervenor that he believed it to be impracticable for the Court of Appeals to pass upon the application for a stay on the basis of the limited record before that Court. Chief Judge Haynsworth suggested that it would be a preferable procedure for defendants to apply to the District Court for a stay of proceedings, and that any application to the Court of Appeals should be deferred until this Court could hear the matter and make appropriate findings of fact. Accordingly, on August 14, 1968, defendants filed an application with this Court for a stay pending appeal. Defendants again seek approval of a three step desegregation plan which would postpone complete conversion to a unitary system to the opening of the 1970–71 school year.

15. The alleged administrative difficulties on which defendants now rely in order to postpone desegregation in Franklin County are entirely the result

of defendants' failure to prepare for conversion to a dual system in accordance with the various orders of this Court and the opinion of the Court of Appeals for the Fourth Circuit in this case. Had defendants taken appropriate steps to assure prompt compliance with the letter and spirit of these orders, they would not now have any difficulty in complying with them. The defendants will not be heard to complain of alleged difficulties which have been created by their own resistance to the implementation of desegregation in Franklin County.

16. The alleged administrative difficulties relied upon by defendants, even if they had been presented to the Court in timely fashion, and even if they were not the result of defendants' own conduct, are manifestly insufficient to warrant further delays in the enjoyment by Negro citizens of Franklin County, North Carolina, of their constitutional rights. Defendants failed to contest the evidence of expert witness William Stormer, who testified that the facilities of the Franklin County schools were such that the conversion could be accomplished with reasonable ease. The "difficulties" on which defendants now rely and the pertinent facts with respect thereto are discussed in more detail in the following findings, and the Court specifically finds that there are no administrative difficulties which prevent the desegregated operation of the Franklin County school system for the 1968–69 school year.

17. Defendants suggest that, in order to comply with this Court's orders, they will have to transfer several thousand students and many faculty members to different schools. Since all students in the same grade in each attendance zone are required by this Court's Order of August 5, 1968, to attend the same school, and since teachers will, for the most part, be automatically assigned to follow the students, the problem of reassignment is a simple one and any difficulties could undoubtedly be straightened out within a day or so of the opening of school. Moreover, if the transfer of students from segregated to non-segregated schools were

accepted as an administrative difficulty justifying postponement of desegregation, conversion to a unitary system would always be subject to this consideration.

18. Defendants claim that, if they convert to a unitary system, the eligibility of the several schools to receive federal financial assistance under the Elementary and Secondary Education Act and other programs will have to be recomputed before the defendants may avail themselves of such assistance. Defendants' difficulty in this respect, to the extent that it exists, is entirely the result of their failure to take steps to comply with the prior orders of this Court, and in particular of their failure to discuss this matter with appropriate officials of the Department of Health, Education and Welfare responsible for the administration of these programs. It appears from the statement to the court of their counsel that defendants failed to submit any application for Title I funds until August 15, 1968, and did so on that date on the basis of student assignments for 1967–68, with the full understanding by the State Coordinator of E.S.E.A. funds that the funds would continue to be made available in the event of different student assignment which might be occasioned by integration. Moreover, there was introduced into evidence at the trial of this cause in July, 1967, proof that it is the policy of the Department of Health, Education and Welfare to assure that benefits "follow the eligible child who has transferred under the school desegregation program." Accordingly, desegregation will not result in the loss of federal financial assistance, and no such threatened loss will justify further postponement of desegregation.

19. Defendants claim that the consolidation of the high schools for 1968–69 is impracticable because, for example, primary school buildings are not suitable for secondary school students without renovations, and the agriculture, trade and industry shops are said to be "too small for the increased number of pupils without renovations and additions." De-

fendants' claims in this regard are stated in broad generalizations and not related to the specific situation in any particular school. Since this Court's order leaves the defendants with complete discretion as to what grades shall be offered at what schools, they can avoid most of these problems, if they in fact exist, by assigning some high school grades to one school and other high school grades to another school (e. g., the assignment of grades 11–12 to Louisburg, and 8–10 to Riverside). Furthermore, the defendants are in a position to divide the classes into two or more sections in those subjects in which the facilities would be overcrowded if there were only one section for a particular grade.

20. Defendants claim that librarians do not report until the opening of school and that the transfer of library books incident to a consolidation cannot be accomplished in the time remaining before the opening of school. It is not necessary, however, that the reorganization of the libraries be completed prior to the opening of school, especially since each high school has had a library sufficient to secure accreditation by the State of North Carolina. Moreover, the defendants can hire additional help to make substantial progress in library reorganization before the opening of school. While some expense would undoubtedly be involved in taking this action, the Court finds that the economies automatically accomplished by elimination of the duplication incident to the dual system will compensate for such additional expense.

21. Defendants allege that the 56,000 textbooks in the system are located at and invoiced to the individual schools and would have to be transferred. Since any transfers of textbooks would be to another school located in the same attendance zone, and since the grade for which a textbook is used would identify the school at which it should be used, this asserted difficulty is quite trivial.

22. Defendants further claim that vocational and other teachers might have to teach outside their field of certification in the event of consolidation, and that this might endanger accreditation. This so-called administrative difficulty is purely speculative in character. Previous evidence introduced in this proceeding shows that teachers and school personnel, including vocational teachers, are allotted to the school system and are then assigned by the school boards to the various schools according to needs. There is no showing here of any administrative difficulties in following this same procedure under the terms of the court order. Moreover, plaintiff-intervenor's expert witness testified that it is the uniformly accepted view among educational authorities that small high schools such as most of those in Franklin County are educationally unsound and cannot furnish a comprehensive program of instruction at a reasonable per pupil cost. Accordingly, the uncontradicted evidence in this case is to the effect that consolidation will substantially improve the educational program in the district.[*]

23. The defendants claim as an additional administrative difficulty that the bus transportation system will have to be reorganized if compliance is to be had with the Orders of this Court. While some reorganization is undoubtedly necessary, conversion to a unitary system will eliminate costly and unnecessary overlapping of the bus routes of previously white and Negro schools.

24. At the hearing of this motion for a stay on August 21, 1968, the defendants proferred the live testimony of Dr. Neal Tracy, of the University of North Carolina at Chapel Hill, and Mr. Earl Martin, Director of E.S.E.A. for

---

[*] See also Joe L. Jackson, School Size and Program Quality in Southern High Schools (1966), published by the Peabody College for Teachers, which concludes on the basis of a comprehensive study that small high schools of the size heretofore existing in Franklin County are at a disadvantage compared with larger schools from the standpoint of practically every significant educational consideration.

Franklin County. Plaintiffs and plaintiff-intervenor noted that the offer of live testimony was not in compliance with the Notice of Hearing, and asked that they be afforded the right to cross examine these witnesses and, if necessary, to be afforded a reasonable time to introduce evidence in rebuttal. This court ruled that the defendants might introduce the oral testimony of the proposed witnesses, but that plaintiff and plaintiff-intervenor would be afforded cross-examination and rebuttal rights. Defendants, having been fully apprised by the Court that these witnesses would be heard, then declined to call them. The defendants then offered into evidence the affidavit of Superintendent Warren W. Smith, which the Court admitted and considered, even though it did not comply with this Court's Notice of August 13, 1968, directing that all evidence be in the form of stipulations or depositions.

## CONCLUSIONS OF LAW

■ 1. The defendants' application for a stay of this Court's Orders of June 20 and August 5, 1968, is addressed to the sound discretion of this Court. Rule 62(c) of the Federal Rules of Civil Procedure.

■ 2. In school desegregation cases, which involve the constitutional rights of Negro citizens to equal treatment, stays of desegregation orders are rarely granted. See, e. g., Ennis v. Evans, 364 U.S. 802, 81 S.Ct. 27, 5 L.Ed. 2d 36 (1960); Houston Indep. School Dist. v. Ross, 364 U.S. 803, 81 S.Ct. 27, 5 L.Ed.2d 36 (1960); Danner v. Holmes, 364 U.S. 939, 81 S.Ct. 686 (1960); Lucy v. Adams, 350 U.S. 1, 76 S.Ct. 33, 100 L.Ed. 3 (1955); Tureaud v. Board of Supervisors, 74 S.Ct. 143, 346 U.S. 881, 98 L.Ed. 388 (1953); Meredith v. Fair, 306 F.2d 374 (5th Cir. 1962), aff'd 83 S. Ct. 10, 9 L.Ed.2d 43 (1962); Taylor v. Board of Education, etc., of New Rochelle, 195 F.Supp. 231 (S.D.N.Y. 1961), aff'd 294 F.2d 366 (2d Cir. 1961), cert. den. 368 U.S. 940, 82 S.Ct. 382, 7 L.Ed.2d 339 (1962). As the Court said in *Taylor* in denying the school board's application for a stay of a school desegregation injunction,

* * * It is incumbent upon the defendants to prove that they will be irreparably injured if a stay is not granted. Cf. Eastern Air Lines, Inc. v. C. A. B., 2 Cir., 1958, 261 F.2d 830. In this instance, this Court is being asked to weigh the constitutional rights of the plaintiffs against the administrative convenience of the Board of Education and to rule in favor of the latter. Merely to state the proposition is to reject it. 195 F.Supp. at 238.

■ 3. In the present case, to grant the application for a stay a matter of days before the opening of school would be to postpone complete desegregation in Franklin County for at least another year. It is the obligation of a school board, even absent the record of intimidation in this case, "to come forward with a plan that promises realistically to work, and promises realistically to work now," Green v. New Kent County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968). Accordingly, as Judge Larkins recently concluded in United States v. Bertie County Board of Education, 293 F.Supp. 1276 (E.D.N.C. August 5, 1968)

Unless the school board can demonstrate the existence of non-racial administrative obstacles, unrelated to community attitudes, which make immediate conversion to a unitary system practically unfeasible, the command of the *Green* case must be implemented immediately. Conclusion of Law No. 5.

See also Brown v. Board of Education, 349 U.S. 294, 299–300, 75 S.Ct. 753, 99 L.Ed. 1083 (1955).

4. The defendants were afforded a full and complete opportunity to introduce evidence as to administrative difficulties in connection with the June 20, 1968, hearing on their proposed plan of desegregation. This Court's notice of May 29, 1968, directed the introduction

of any new evidence by way of stipulations and depositions. Had the defendants proceeded in compliance with this notice and introduced evidence of alleged administrative difficulties by taking depositions, the plaintiffs and plaintiff-intervenor would have had the opportunity to cross-examine any witnesses. Instead of following this procedure, the defendants first wrote the *ex parte* letter to the Court described in Finding of Fact 11A and subsequently presented their alleged administrative difficulties to the Court of Appeals by means of an affidavit, which, if accepted, would preclude cross-examination. No justifiable reason has been adduced by defendants for failing to present evidence at the appropriate stage of the proceedings.

5. The defendants have been under court order to convert to a unitary system of schools at the earliest practicable date since August 17, 1967. Since June 20, 1968, they have been under a court order explicitly directing them to complete the conversion for the opening of the 1968–69 school year. It has been the defendants' duty, since these orders have been entered, "to take proper steps to ensure compliance with the writ and to follow such steps up by vigorous action," Babee-Tenda Corp. v. Scharco Mfg. Co., 156 F.Supp. 582, 586 (S.D. N.Y.1957); and see generally Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); United States v. Cox, 11 Race Rel.L.Rep. 269, 287 (N. D.Miss.1964). The fact that this Court's Order of August 17, 1967, was on appeal for several months did not affect defendants' duty to obey it. United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); 2 High on Injunctions § 1413 (1905). The lack of disposition on the part of the defendants to take affirmative action to implement the orders of this Court, or even to comply with the literal terms thereof, is demonstrated by their filing of a plan providing for complete desegregation in 1970–71 in response to this Court's Order of June 20, 1968, which required compliance two years earlier. Chief Judge Haynsworth's comment in affirming this Court's 1967 Order that "in the most charitable view, the School Board's response [to this Court's Orders] was wooden and little calculated to procure the result the Court envisioned," is as applicable to the defendants' conduct since the Court of Appeals decision as it was to the faculty desegregation order to which Chief Judge Haynsworth referred. Since defendants have obviously created such difficulties as they have by failing to take proper preparatory steps when it first became their duty to do so, they will not now be permitted to take advantage of their own failure to do what the law required of them and to continue to deny Negro pupils their constitutional rights on the basis of the defendants' own conduct.

6. The alleged administrative difficulties relied on by the defendants in this case are common to most rural counties in North Carolina which have heretofore operated under freedom of choice. Similar alleged difficulties have been held not to justify the postponement of desegregation in cases in which the duty to adopt a unitary plan other than freedom of choice has arisen only after, and as a result of, the Supreme Court's decision on May 27, 1968, in Green v. New Kent County School Board, supra. School districts with no prior obligation to abandon freedom of choice have recently been ordered to desegregate all grades, Boomer v. Beaufort County Board of Education, 294 F.Supp. 179 (E. D.N.C. August 5, 1968), all elementary school grades, United States by Clark v. Jones County Board of Education, 295 F.Supp. 640 (E.D.N.C. August 23, 1968), or all high school grades effective with the commencement of the 1968–69 school year. United States v. Bertie County Board of Education, 293 F.Supp. 1276 (E. D.N.C. August 5, 1968). This Court entered the above-described Order in the *Jones County* case even though, shortly prior to the *Green* decision, the parties had tentatively agreed on a settlement which would not have re-

quired completion of the conversion to a unitary system until the opening of the 1970–71 school year, and even though this Court was favorably impressed with the readiness of the Jones County Board of Education to reach a reasonable settlement. Since the defendants in this case did not present their proof of alleged administrative difficulties at the appropriate stage of the proceedings, since they have repeatedly presented obviously unsatisfactory plans to this Court for approval, since they have had notice of their duty to abandon free choice for a substantially longer period than the school boards in the cited cases, and since such transitional difficulties as commonly exist have been compounded by the defendants' inaction following the entry of desegregation orders in this case, the considerations which led the Court to reject such alleged administrative difficulties as justification for further delay in the *Beaufort, Jones* and *Bertie County* cases apply even more strongly here.

7. The defendants' conduct in this case, including the submission of desegregation plans manifestly incompatible with the letter and spirit of the orders requiring their submission, is a reflection of the marked community hostility to desegregation which brought about the initial rejection by this Court and the Court of Appeals for the Fourth Circuit of defendants' freedom of choice plan. It is now well settled, however, that community hostility to desegregation, even in the form of the probability or threat of white pupils fleeing from districts in which Negroes significantly outnumber them, does not provide a legal defense against desegregation, Brown v. Board of Education, 349 U.S. 294, 300, 75 S.Ct. 753, 99 L.Ed. 1083 (1955); Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19 (1958); Monroe v. Board of Commissioners of City of Jackson, Tenn., 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968). As Judge Larkins said in the *Bertie County* case, supra, which involves a district which is 72% Negro:

It is axiomatic that the constitutional rights of Negro children may not be restricted because of opposition to their implementation [citing cases]. Accordingly, conversion to a unitary system may neither be avoided nor postponed on the basis of community attitudes, actual or supposed. Conclusion of Law No. 4.

8. As the Supreme Court said in United States v. United Mine Workers, 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947)

\* \* \* an order issued by a court with jurisdiction over the subject matter must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the Act under which the order is issued.

Accordingly, defendants are

required to take energetic steps to see that the orders of the court [are] carried out. They [are] required themselves to follow through and to take all affirmative steps necessary to comply with the court's directions. Babee-Tenda Corp. v. Scharco Mfg. Co., 156 F.Supp. 582, 587 (S.D.N.Y.1957).

The Court specifically holds that the duty of affirmative action to comply with the letter and spirit of the orders of this Court applies and will continue to apply irrespective of the filing of any further appeals, motions for a stay, or other proceedings, until such time as such Orders have been set aside by a court of competent jurisdiction.

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, it is hereby ORDERED as follows:

1. The defendants' application for a stay of the Orders of this Court of June 20 and August 5, 1968, is in all respects denied;

2. The schools in Franklin County shall be opened as promptly as possible in compliance with the aforesaid Orders of this Court. In the event that defend-

ants elect to postpone the opening of school in Franklin County in order to comply with these Orders, they shall afford the pupils of Franklin County School District an opportunity to make up any loss of school time occasioned by such postponement, by effecting a similar postponement of the end of the school year, or by otherwise assuring said pupils the educational opportunities to which they are entitled.

The Court retains jurisdiction of this action for all purposes.