Dorothy GAUTREAUX et al., Plaintiffs-
Appellees,

v.

The CHICAGO HOUSING AUTHORITY
et al., Defendants-Appellants.

No. 18681.

United States Court of Appeals,
Seventh Circuit.

Dec. 16, 1970.

Rehearing Denied Feb. 18, 1971.

Stay Denied March 8, 1971.
See 91 S.Ct. 980.

Patrick W. O'Brien, Kathyrn M. Kula, Watson B. Tucker, Chicago, Ill., for appellants; Mayer, Brown & Platt, Chicago, Ill., of counsel.

Alexander Polikoff, Bernard Weisberg, Merril A. Freed, Milton I. Shadur, Charles R. Markels, Cecil C. Butler, Chicago, Ill., for appellees.

Before DUFFY, Senior Circuit Judge, and KILEY and PELL, Circuit Judges.

DUFFY, Senior Circuit Judge.

This suit was commenced in 1966. All of the plaintiffs are Negroes and are either tenants or applicants for public housing. They challenged upon behalf of themselves and the members of their class, the constitutional validity of the site selection policy of the Chicago Housing Authority (CHA).

Plaintiffs' complaint contained four counts. Count I alleged that defendants intentionally chose sites for family public housing and adopted tenant assignment procedures in violation of Title 42, §§ 1983 and 1985 for the purpose of maintaining existing patterns of residential separation of races in the City of Chicago. Count III alleged that regardless of their intent, defendants violated Title 42 U.S.C. §§ 1983 and 1985 by failing to select sites for public housing in a manner which would alleviate existing patterns of racial separation.

Counts II and IV repeated the allegations of Counts I and III respectively, but demanded relief under Title 42 U.S. C. § 2000d (Section 601 of Title VI of the Civil Rights Act of 1964).

On March 2, 1967, defendants' motion to dismiss Counts III and IV of the complaint was granted, but a similar motion to dismiss Counts I and II was denied. Gautreaux v. Chicago Housing Authority, D.C., 265 F.Supp. 582. No appeal was taken from that decision.

Between March 2, 1967 and February 10, 1969, both parties submitted much evidence in the form of depositions, affidavits and exhibits to support their respective positions on the merits of the Constitutional issues. On February 10, 1969, both sides moved for summary judgment.

On February 20, 1969, the District Court granted defendants' motion for summary judgment as to Count II, dismissing that Count of plaintiffs' complaint. At the same time, in a memorandum opinion, the Court granted plaintiffs' motion for summary judgment on Count I of the complaint. Gautreaux v. Chicago Housing Authority, 296 F.Supp. 907.

In its opinion, the Court found that while defendant CHA did not necessarily harbor a subjectively racist attitude, it had intentionally maintained a system of public housing which discriminated on racial grounds with respect to the selection of sites for public housing in the City of Chicago, and with respect to tenant assignments within the public housing system. Among the practices specifically cited by the Court as pointing to discrimination on the basis of race was a "pre-clearance" procedure whereby any proposed site for public housing was informally submitted to the alderman of the ward in which the housing project was to be located before the formal procedure of submitting the site to the Chicago Plan Commission and the Chicago City Council was initiated.

It was not disputed that the aldermen to whom proposed sites were submitted

for "pre-clearance" vetoed these sites because the 90% Negro waiting list and occupancy rate would create a concentrated Negro population in the White area. The Court further pointed out that the few sites which escaped the aldermen's informal veto were rejected by the City Council on racial grounds. It seems to be conceded that most of the aldermen who vetoed proposed White sites did so because of the unfavorable reaction thereto by residents of their ward.

On July 1, 1969, in accordance with the February 20th opinion and after conferences with both parties at which time comprehensive plans were submitted, the District Judge entered a Judgment Order granting equitable relief to plaintiffs. Gautreaux v. Chicago Housing Authority, D.C., 304 F.Supp. 736. Defendants were ordered to build a certain percentage of all public housing thereafter erected in Chicago, in the "General Housing" areas of that city. The "General Housing" area was synonymous roughly with the predominantly White areas. Defendants were ordered further to submit certain reports to the United States Department of Justice and to the District Court. Paragraph VIII, the modification of which is the subject of this appeal, provided, in relevant part:

"CHA shall affirmatively administer its public housing system in every respect (whether or not covered by specific provision of this order) to the end of disestablishing the segregated public housing system which has resulted from CHA's unconstitutional site selection and tenant assignment procedures. Without limiting the foregoing,

A. CHA shall use its best efforts to increase the supply of Dwelling Units as rapidly as possible in conformity with the provisions of this judgment order and shall take all steps necessary to that end, including making applications for allocations of federal funds and carrying out all necessary planning and development. * * *"

Subsection B of Paragraph VIII permanently enjoined CHA from using the "pre-clearance" procedure, previously discussed.

The District Court retained jurisdiction of the matter "for all purposes, including enforcement and issuance, upon proper notice and motion, of orders modifying or supplementing the terms of this order." The order has been supplemented by five subsequent orders entered on September 12, 1969; September 15, 1969; October 20, 1969; October 23, 1969 and November 24, 1969, respectively.

Up to this point in the litigation, no appeal was ever taken by either party. The validity of the February 20, 1969 opinion finding of racial discrimination on the part of CHA and of the July 1, 1969 judgment order granting equitable relief in favor of plaintiffs, remain unchallenged and are not the subject of this appeal.

Illinois law requires defendant to submit all sites for public housing to the Chicago Plan Commission and then to the Chicago City Council for approval. (Ill.Rev.Stat. Chap. 24, Sec. 11–12–4.1, and Chap. 67½ Sec. 9). As of May 1970 and continuing to this date, no sites for family dwelling units have been submitted by defendant (CHA) since the entry of the July 1, 1969 order.

Beginning in May 1970, plaintiff's counsel began to make inquiries of defendant as to why new sites had not been submitted so as to determine whether defendants were using their "best efforts" in accordance with the provisions of the July 1, 1969 order. Plaintiffs were informed that defendants wished to delay submission of sites and that allegedly, defendants "did not intend to advise the City Council of sites appropriate for dwelling units * * * prior to the Chicago Mayoralty election scheduled to be held in April, 1971."

As a result of the inquiries by plaintiffs' counsel, a series of conferences

with the District Judge leading up to the entry of the order now appealed from were arranged. Five such conferences actually took place. The first was scheduled for June 2, 1970. It was agreed between the parties that they would confer in Judge's Chambers "rather than appear before him in open court on his motion call." The parties further agreed that such conferences would take place without a Court Reporter present. Defendants made no objection to the procedure for these appearances before the District Judge.

In a May 25, 1970 letter written to plaintiffs' counsel, confirming the arrangements for the June 2 conference, CHA's counsel also stated that CHA would be prepared "to respond fully on June 2 to plaintiffs' request for information" and that CHA was "eager to discuss the broader issues you allude to in your letter of May 20th." It does not seem to be disputed that the "broader issues" referred to were CHA's various proposals for timing of the submission of sites to City Council which would result in deferral of site submission until sometime in 1971.

On June 2, 1970, the first informal conference was held in the Chambers of the District Judge. According to a later transcribed statement by the District Judge, inquiry was made at the beginning of the June 2 conference (and at subsequent conferences) as to whether the parties desired to have a Court Reporter present. Those representing CHA indicated they did not. Likewise, the plaintiffs' attorneys made no request for the attendance of a Court Reporter.

In response to plaintiffs' request for information, defendants submitted a "Chronology of site selection procedure" outlining all steps taken by CHA to acquire sites within the city as well as showing records of correspondence with the Department of Housing and Urban Development (HUD) regarding site development. Also produced were copies of some recent letters to a number of suburban authorities requesting information on possible housing sites in the suburbs. The defendants also submitted a chart indicating progress towards obtaining HUD approval of public housing sites. That chart indicated that prior to the June 2 conference, a total of 263 sites which would generate approximately 1500 family dwelling units had received HUD approval.

The second conference in Chambers was held on June 16, 1970. Judge Austin requested information on procedural steps for site selection. On June 22, CHA submitted a letter in answer to the Judge's request.

A third conference in Chambers was held on June 26, 1970. All five of the CHA Commissioners were present. Chairman Swibel made "comments" regarding timing of site submission which were made a part of the record. Mr. Swibel advised the District Judge that it was imperative that the timing factor be carefully considered and that if that factor were disregarded, it could result in 1) complete stoppage of the urgently-needed housing program; 2) racial tension in the city to the point of strife; 3) acceleration of an already alarming flight to the suburbs by middle class White families; and 4) vigorous protests from the Black community for failure to make housing available to them outside of the city.

Mr. Swibel, on behalf of the Board, further tendered an unequivocal commitment that as soon as sufficient feasible sites had been located outside the city for one third of the dwellings scheduled for the general public housing area, the city sites would be delivered to the City Council for action and the suburban sites would be submitted to the respective governing bodies for their approval.

Mr. Swibel further urged that public housing should be considered as a metropolitan area problem which should be solved on a metropolitan area basis.

Along with Chairman Swibel, Richard Wade, a CHA Commissioner, made a statement to the Court during the June 26 conference. Mr. Wade later incorporated the substance of his comments in a

letter to the District Judge dated July 9, 1970. Here he stated his belief that submission of sites to the City Council "before the upcoming campaigns" would have adverse political consequences, and urged that site submission should be accordingly delayed.

At the June 26, 1970 conference, plaintiffs' counsel argued against deferral of site submission, but did not request any formal order to that effect.

Before turning to the fourth informal conference, one further event should be noted. On July 9, 1970, the Regional Administrator of HUD wrote a letter to the Executive Director of CHA about the status of the approximately 1500 HUD approved Dwelling Units previously referred to in this opinion. The Regional Director expressed concern over possible delay in submitting these sites to the City Council as late as 1971. He indicated that any such delay would be "quite a serious matter" and noted that the Department's ability to hold the reservation of those sites would be involved if such a delay occurred.

At the beginning of the fourth informal conference on July 13, 1970, plaintiffs' counsel submitted a letter and proposed order to the District Judge. The letter objected to CHA's failure to submit any sites to the City Council since the entry of the July 1, 1969 Order and, in the proposed order, moved for the preparation of a comprehensive report containing a full disclosure of all of defendants' efforts to comply with the "best efforts" clause. The proposed order did not formally move for the establishment of a timetable for site submission.

Also at the July 13, 1970 conference, defendants' counsel moved for a continuance so that a Dr. Greeley (who was not present in Court) could make a presentation to the District Judge in favor of CHA's proposal for delay. The District Judge inquired as to the nature of Dr. Greeley's proposed testimony, and then denied the request. At a later transcribed hearing, the District Judge stated that in denying the request, he had indicated his belief that Dr. Greeley's testimony would be repetitive and "a reiteration of views heretofore expressed by the Chairman of CHA (Swibel) and by Mr. Wade of CHA."

At the conclusion of the July 13 conference, the District Judge indicated his intention to enter an order and stated that defendants should not delay any longer in submitting proposed sites to the Plan Commission and the City Council. At this point, defendants' counsel, still voicing no objection to the form of the proceedings thus far, stated that CHA might wish any such order to be in written form. The next day CHA confirmed its request for a written order.

At the fifth conference in Chambers held on July 20, 1970, the District Judge entered a judgment order modifying the "best efforts" provision of the earlier July 1, 1969 order. Proposed sites for public housing were ordered submitted to the Plan Commission and City Council in accordance with a specific timetable. The relevant parts of the July 20, 1970 order upon which this present appeal is based, provide:

"It having been represented to the Court by the defendant Chicago Housing Authority ("CHA") that CHA presently has a reservation from the United States Department of Housing and Urban Development ("HUD") for the provision of 1500 Dwelling Units (as defined in this Court's judgment order of July 1, 1969; that approximately 260 sites in the General Public Housing Area (as defined in said order of July 1, 1969) have been identified by CHA as appropriate for the construction of an estimated 1580 Dwelling Units; that said sites have been submitted by CHA to HUD and that the same have been approved by HUD; and that the next steps to be taken by CHA to the end that Dwelling Units may be provided as rapidly as possible in conformity with said order of July 1, 1969, are the referral by CHA of proposed sites to the Chicago Plan Commission pursuant to Chapter 24 Sec. 11–12–4.1 Ill.Rev.

Stats.1969 and advice of the same to the Chicago City Council pursuant to Chapter 67½ Sec. 9 Ill.Rev.Stats. and "It appearing to the Court that it is desirable that CHA use its best efforts to increase the supply of Dwelling Units as rapidly as possible as provided in said Judgment Order;

"It is hereby ordered, pursuant to Subsection A of Article VIII of the Judgment Order entered herein on July 1, 1969, as modified:

\* \* \* \* \* \*

"II. On or prior to August 20, 1970 CHA shall refer to the Chicago Plan Commission pursuant to Ch. 24, Sect. 11–12–4.1 Rev.Stat.1969 and on or prior to September 20, 1970 CHA shall advise the Chicago City Council pursuant to Ch. 67½ Sect. 9, Ill.Rev.Stat.1969 of sites appropriate for the construction in conformity with the provisions of said Judgment Order of July 1, 1969 of not fewer than 1500 Dwelling Units."

On July 20, 1970, CHA moved to vacate the above order. This motion was denied on August 13. The District Court's order was stayed pending this appeal.

■ A preliminary question facing us is whether the July 20, 1970 order is appealable. Defendants urge that the order is appealable either as a final order or as an interlocutory order granting or modifying an injunction. We agree that the order is appealable as a final order of the District Court under Title 28 U.S.C. § 1291. The order was positive, final, and complete and unequivocally directed CHA to take certain action. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528; United States v. McWhirter, 376 F.2d 102 (5 Cir., 1969).

CHA objects first to the procedure leading up to the July 20, 1970 order to submit sites to the City Council and secondly, to the substance of that order insofar as a timetable was imposed. With respect to the procedure, CHA strongly urges that the order was entered without notice and without a hearing. They contend that the five conferences in Chambers were in effect pre-trial conferences, and point out that there were no docket entries pertaining to them. It is CHA's position that while they were more than willing to discuss the matter of timing of site submission with the District Judge throughout the course of the five in-chambers conferences, they had no expectation until July 13, 1970 that the Judge was going to enter an order imposing a specific timetable.

In some respects it is unfortunate that the court procedure employed throughout these conferences was informal. It is a practice which normally should not be followed. However, in the case at bar, it is evident that the Court followed a procedure that seemed to be in accordance with the wishes of both parties. Moreover, it appears that defendant CHA was very anxious that publicity should not be given to the proceedings, and for this reason declined the Judge's offer to have the conferences transcribed.

■ After reviewing the record and the briefs of the parties, we have concluded that defendant CHA waived the opportunity to have formal and open hearings before the District Court. CHA not only indicated a preference for informal conferences without the services of a Court Reporter, but it never registered or made known any objection as to the manner in which the five conferences were being conducted. Inasmuch as CHA continuously assented, over a period of two months, to the informal procedures of the conferences, but later, perhaps as a matter of hindsight, concluded such procedures were unwise, we must and do conclude that this point has been waived by defendant CHA and thus, the asserted defense of failure to hold open hearings is not a valid defense in this case.

■ Although we hold that defendant waived the opportunity for a formal hearing on the question of timing, we

note further that much of the substance of the five conferences concerned that very subject. After the first two conferences, the necessary procedural steps for site submission had been outlined for the Court and it had been established that at least for the 263 HUD approved sites, the next step toward erecting housing was submission of the sites to the Plan Commission and City Council. The inquiry then turned to whether there were any convincing reasons why site submission should be delayed. Chairman Swibel's comments articulated specific reasons in favor of deferral and were placed in written form for the Court. Likewise, Commissioner Wade, both orally at the conference and later on in a letter to the Court, argued for delay in submission of sites to the Plan Commission and the City Council. After these presentations, and the earlier conferences all of which totaled several hours, it was not unreasonable for the District Judge to have declined to hear the views of Dr. Greeley, especially when the witness was not in Court at the time the request to be heard was made. We do not think that the Court's refusal to hear Dr. Greeley justifies a special remand by this Court.

■ For similar reasons we feel compelled to reject CHA's arguments that they lacked notice of the entry of the July 20 order. We grant that no formal request was ever made that a timetable be imposed. But, from an examination of the record and briefs, it is clear that defendants should have been aware that such an order might be entered. It is undisputed that CHA knew from the very beginning that a prime subject of discussion at the conferences would be the matter of timing. In fact, the conferences were arranged as a result of inquiries by plaintiffs' counsel as to why sites were not being submitted to the City Council. CHA expressed a willingness to discuss this matter further in conference and not in open court.

Although CHA argues that this admitted willingness to discuss the timing of site submission did not include an acknowledgment that a "controversial" order would be entered, this claim is refuted by their own attitude at the conferences. Both Chairman Swibel and Commissioner Wade of defendant CHA presented carefully prepared statements in favor of deferred site submission, the very subject of the order of which complaint is made. Both Swibel and Wade were representatives of a defendant which already was under Court order to "affirmatively administer its public housing system in every respect * * * to the end of disestablishing the segregated public housing system * * *" and to "use its best efforts to increase the supply of Dwelling Units as rapidly as possible." Under such conditions and where the move toward informality came at CHA's request, we find the claim of lack of formal notice unpersuasive.

We turn now to CHA's final contention that the District Judge abused his discretion in ordering sites to be submitted to the City Council in accordance with a specific timetable. We find no error in this respect.

The Supreme Court has spoken clearly on the matter of a District Court's discretion in Constitutional cases. In Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256, it held that a Virginia District Court did not abuse its discretion in refusing to delay the opening of the Prince Edward County schools in accordance with a school desegregation order. The Court commented on the propriety of a timetable order and stated: "An order of this kind is within the court's power if required to assure these petitioners that their constitutional rights will no longer be denied them." (377 U.S. at 233–234, 84 S.Ct. at 1234).

Consistently, both the Supreme Court and other Federal Courts have held that "abstention" is inappropriate in constitutional cases of this sort and that community hostility is no reason to delay enforcement of proven constitutional rights. Coppedge v. Franklin County

Board of Education, 293 F.Supp. 356 (E.D.N.C., 1968), affd. 404 F.2d 1177 (4 Cir., 1968); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Holmes v. New York City Housing Authority, 398 F.2d 262 (2 Cir., 1968).

■ In view of the fact that HUD-approved sites for 1500 Dwelling Units were awaiting submission to the City Council and that the arguments put forward in favor of delaying submission were based on political considerations and community hostility, reasons which had been properly rejected by the lower court in the original litigation, we hold that it was no abuse of discretion for the District Judge to impose deadlines for submission one year after the entry of the original "best efforts" order.

The July 20, 1970 order of the District Judge is affirmed and the cause is remanded to the District Court for submission of sites to the Chicago Plan Commission and to the City Council in accordance with a revised timetable.

Affirmed.

KILEY, Circuit Judge (dissenting).

I dissent. In my opinion the district court erred in modifying the July 1, 1969 judgment by imposing the specific timetable without the "proper notice and hearing" required by that judgment; and that the error is of sufficient substance to require a remandment to the district court for a "proper hearing" at which both sides may present evidence with respect to a timetable with a complete record upon which we may determine whether the court's discretion had been soundly exercised.

I agree with Judge Duffy that the concurrence of both parties in the proceedings before the district court constituted a waiver of CHA's right to complain of lack of "formal and open" hearings and a transcript. But I do not see how an agreement to have informal hearings without a reporter on one matter can constitute a waiver of the right

to notice of a hearing on another matter. The scant record before us indicates that the purpose of the five informal "conferences" was to obtain information from CHA concerning what action it had taken to conform with the "best efforts" provision of the July 1, 1969 judgment.

Plaintiffs' counsel's July 13, 1968 letter to Judge Austin, with copies sent to counsel for the CHA, requested that CHA be ordered "to cooperate with us in preparing a factual report for the court." Plaintiffs' counsel submitted with the letter a proposed order form. Neither the letter nor the proposed order, however, made mention of a specific timetable, but rather concerned a "non-controversial" report of CHA's required "best efforts." The letter stated that "perhaps everything is being done that can be done" but that could not be determined without further information from CHA.

Clearly in itself the letter and the proposed order submitted with it gave no notice that the imposition of a specific timetable was to be considered. No doubt CHA knew that its performance was under challenge and that in general the question of timing was involved, and it perhaps should have anticipated issuance of a rule to show cause why it had not complied with the order's "best efforts" requirement by submitting the approved sites. But neither that knowledge nor that anticipation is a substitute for a "proper notice" that the July 1, 1969 order was to be modified by setting the specific timetable. There was no "proper notice," as required by the 1969 judgment.

Plaintiffs' counsel at the August 13 hearing on CHA's motion to vacate the July 20, 1970 order recalled that he had made an oral motion at the July 13, 1970 conference that "the court express its view that it was high time CHA got down to brass tacks and submitted the already approved sites to the City Council"; and that the court "expressed the view that that was an appropriate thing

for CHA to do." But this was not a "proper notice" of a hearing upon a specific timetable and no hearing was had with respect to a timetable. Counsel for CHA requested at the conference a continuance to present evidence of sociologist Dr. Greeley, but the continuance was denied on the basis that the proposed testimony would only be repetitive of what had already been said in written statements addressed to the district court by CHA Chairman Swibel and Commissioner Wade. Dr. Greeley's letter, submitted with defendants' motion to vacate, indicates it is not wholly "repetitive."

I also think that the written statements did not constitute a "proper hearing" on the subject of a specific timetable. Commissioner Wade expressed the view that the submission of sites to the City Council at a time when it could be embroiled as a political campaign issue could result in "less housing." Chairman Swibel stated that "timing" was an essential factor in implementing the 1969 order and that sites should not be submitted to the City Council until arrangements were reached with surrounding suburbs for establishing sites in these areas simultaneously with intracity sites to prevent flight to the suburbs; and expressed fear of increased racial tension in the city, and complete stoppage of the housing program. It is quite understandable why the CHA would want to present the testimony of experts unconnected with CHA, as "for instance" Dr. Greeley,[1] backed up possibly with sociological data, to support the goals of the 1969 judgment and plans of the CHA. I think the district court erred in considering that proffered testimony irrelevant. And by excluding it from consideration the court, in my view, denied CHA a "proper hearing."

My conclusion therefore is that CHA was denied the "proper notice and hearing," required by the 1969 judgment, with respect to a specific timetable. The question now is whether the denial was of substantial prejudice to CHA. Having in mind that form must not be exalted over substance, my opinion is, nevertheless, that CHA might have been substantially prejudiced by the district court action.

The CHA goal, approved in the 1969 judgment, was a comprehensive Chicago and suburban public housing program. It must be of substantial interest to CHA, as well as to plaintiffs, whether embroilment of public housing sites in a heated political campaign would frustrate the comprehensive program. If that is so, the question of timing of submission of the sites is of importance. The sworn testimony of Swibel, Wade, and Dr. Greeley, as well as other expert testimony, would be relevant on that question. In my opinion, therefore, the CHA should have had an opportunity to persuade the district court, upon a proper record, of the wisdom of a less "rigid timetable"[2] than the one imposed without a "proper notice and hearing."

I do not think this view exalts form over substance. This court, in its order granting a stay of the district court order on appeal, referred to CHA's statement that compliance with the timetable "presents a clear danger that there will be no low income housing units built anywhere." This court construed that statement to be "an assertion that there will be irreparable injury to the public." The stay order was granted "because of the importance of the public and constitutional issues involved." This court expedited this appeal because of that "importance."

---

1. Counsel for CHA also requested, in its motion to vacate, that the court hear the testimony of a "Washington expert who will testify that the precise form of procedure set in the July 20 order brought about a complete collapse of public housing efforts in Washington."

2. CHA, at the August 13 hearing on its motion to vacate, argued that plaintiffs' July 13 letter and suggested order did not give it notice that plaintiffs were asking the court "to impose these rigid time limits." It requested a new hearing to determine whether these timetables were too rigid.

I would retain jurisdiction and remand for an early hearing, with findings and conclusions certified to us on a complete record suitable for appellate review.