John E. RENNIE, Plaintiff,

Caroline Mauger, Eugenio Burgeos, Leon Rossi, Hazel Moncrief, Ernie Welker, Mary Jane Weiss, Maragret Mary McGrath, Joseph Kamienski, Intervenors, on behalf of themselves and all others similarly situated,

v.

Ann KLEIN, Commissioner, Department of Human Services; Michail Rotov, M.D., Director of the Division of Mental Health and Hospitals; Max Pepernick, M.D., Acting Medical Director at Ancora Psychiatric Hospital; Robert Wallis, Chief Executive Officer at Ancora Psychiatric Hospital; Engracio Balita, Consuelo Santos, Victor Ivanov, Gerald Abraham, Assistant Medical Directors at Ancora Psychiatric Hospital, Defendants.

Civ. A. No. 77–2624.

United States District Court,
D. New Jersey.

Dec. 21, 1979.

Stanley C. Van Ness, Public Advocate by Sheldon Gelman, Asst. Deputy Public Advocate, Trenton, N. J., for plaintiff and intervenors.

John J. Degnan, Atty. Gen. of N. J. by Steven Wallach, Deputy Atty. Gen., Dept. of Law and Public Safety, Human Services and Corrections Section, Trenton, N. J., for defendants.

## OPINION

BROTMAN, District Judge.

■ This is a motion to stay the enforcement of the court's order of September 14, 1979 in the above-captioned case, reported at 476 F.Supp. 1294 (D.N.J.1979), pending appeal of the court's decision to the Court of Appeals for the Third Circuit. This court is authorized to hear this motion by Fed.R.Civ.P. 62(c), and a party is normally required to apply to the district court first before he may apply to the court of appeals or an individual circuit judge for a stay pending appeal. Fed.R.App.P. 8(a).

This case has a long history, which is amply discussed in the court's prior opinions, 476 F.Supp. 1294 (1979) and 462 F.Supp. 1131 (D.N.J.1978). Therefore, instead of restating the entire procedural history of this case, the court will focus upon the facts relevant to this particular motion.

On July 13, 1979, plaintiff and intervenors filed a motion for a preliminary injunction against the defendants. The court held hearings on this motion for several days, concluding them on August 9, 1979. Before issuing its ruling on the motion for a preliminary injunction, the court advised the litigants of its intended action and sought their comments on its proposed order. It explained the considerations which shaped the order in its September 14, 1979 opinion:

> The court has attempted to closely tailor its order in this case to the clear violations of privacy and due process engendered by the policies of defendants. The order is designed to interfere with hospital operation as little as possible while still guaranteeing a realistic opportunity for patients to exercise their qualified right to refuse treatment. The court has also tried to include in its decree those ideas discussed by defendants themselves, but never fully implemented, which, when put into full effect, would satisfy constitutional requirements.

476 F.Supp., at 1311. The court made its preliminary injunction decree effective January 7, 1980, with the exception of Part F,

which mandates the submission of monthly reports by the defendants on the implementation of the court's order, as well as certain administrative guidelines. The defendants have complied with the reporting requirements of the court's order, and these reports have documented the extent of their implementation of the rest of the order. The court has carefully reviewed and relied upon these materials in considering the defendants' current motion.

In its September 14, 1979 opinion, the court made the following analysis of the merits of the motion for a preliminary injunction:

> Four factors are considered in the application for a preliminary injunction: (1) whether the moving party has shown that it is likely to prevail on the merits, (2) whether the movant has demonstrated that he would be irreparably harmed if the preliminary injunction is denied, (3) whether the grant of the injunction would harm other interested parties to a greater extent than it would benefit movant, and (4) whether the public interest would be served. *A. O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3rd Cir. 1976).
>
> After 17 days of hearings, the plaintiffs have clearly demonstrated a likelihood of prevailing on the merits on the recertified classes. It is also clear that if defendants are not enjoined plaintiffs will be irreparably harmed by the transient discomfort and permanent injury caused by medication. The court finds that prevention of these harms outweighs the additional administrative costs the order may impose on the state. Finally, protection of plaintiff's constitutional rights is indisputably in the public interest.

*Id.*

The defendants' present motion asks this court to evaluate similar factors in determining whether to stay the enforcement of the order pending appeal. An application for a stay pending appeal is governed by Fed.R.Civ.P. 62(c), which provides in pertinent part:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms . . . as it considers proper for the security of the rights of the adverse party.

The court's resolution of a Rule 62(c) motion is guided by four basic factors. Although different courts have not used completely identical language, they have agreed upon the list of factors, which were recently described by a district court in this circuit in *Evans v. Buchanan*, 435 F.Supp. 832, 841 (D.Del.1977):

> A motion for a stay is addressed to the sound discretion of the Court. *Coppedge v. Franklin County Board of Education*, 293 F.Supp. 356, 362 (E.D.N.C.1968). The burden of [the moving parties] is to make: (1) a showing that they will suffer irreparable injury if the stay is denied; (2) a strong showing they likely will succeed on the merits of their appeal; (3) a showing the plaintiffs will not be substantially harmed by the stay; and (4) a showing no harm will be done to the public interest. *Reserve Mining Co. v. United States*, 498 F.2d 1073, 1076–1077 (8th Cir.), *application to vacate stay denied*, 419 U.S. 802, 95 S.Ct. 287, 42 L.Ed.2d 33 (1974).

In view of the similarity of the standards governing decisions to issue preliminary injunctions and to stay their enforcement pending appeal, the defendants' motion to stay pending appeal seems to be defective in certain crucial respects. The court will now examine these potential deficiencies.

First, the court notes that in ruling upon the motion for a preliminary injunction it concluded that the moving parties "have clearly demonstrated a likelihood of prevailing on the merits." *Rennie*, 476 F.Supp., at 1311. This appears to be inconsistent with the requirement that the court staying enforcement of an injunction conclude that the moving party is likely to prevail on the merits.

The defendants have responded to this argument by asserting that the concept "likely to prevail" has a different meaning in the two different contexts, and have cited two cases in support of their claim that they are likely to prevail as that term is applied to motions for stays pending appeal. The first case cited by the defendants is *Evans v. Buchanan*, 435 F.Supp. 832 (D.Del.1977), which involved a motion to stay the district court's proceedings in school desegregation cases pending a decision by the United States Supreme Court upon the movant's petition for a writ of certiorari. Although the court in *Evans* did suggest that a more liberal standard governs motions for stay pending appeal than that applied to motions for a preliminary injunction, its implication that the court may apply a more liberal test of the moving party's probability of success was tied to the strength of the other factors in his case, and the court noted that the ultimate determination of whether these were sufficient to overcome the relative weakness of the movant's position on the likelihood of success was a matter for the court in the exercise of its discretion. The court said:

> In a case where the movant will suffer irreparable injury in the absence of a stay, consideration of the merits of the movant's appeal permits an evaluation of whether that injury is likely to occur in any event. It seems illogical, however, to require that the court in effect conclude that its original decision in the matter was wrong before a stay can be issued. Rather, a stay may be appropriate in a case where the threat of irreparable injury to the applicant is immediate and substantial, the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear and the interests of the other parties and the public are not harmed substantially. This is not to say, however, that every time a case presents difficult questions of law a stay should be entered. As noted earlier, the four factors must be viewed together and the interest of the movant balanced against the interests of the other parties and the public. It is the duty of the

court to exercise its discretion so that an equitable resolution is achieved.

435 F.Supp., at 844. The other case cited by the defendants, *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 182 U.S.App.D.C. 220, 222, 559 F.2d 841, 843 (D.C.Cir.1977) took a similar all-the-factors test. The court said:

> we hold that . . . a court, when confronted with a case in which the other three factors strongly favor interim relief may exercise its discretion to grant a stay if the movant has made a substantial case on the merits. The court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, as in this case, may grant a stay even though its own approach may be contrary to movant's view of the merits. The necessary "level" or "degree" of possibility of success will vary according to the court's assessment of the other factors.

However, it is the conclusion of this court that even if the more liberal test of likelihood of prevailing on the merits applied to the defendants' motion in this case, it would not warrant, in the exercise of the court's discretion, the issuance of a stay pending appeal. This may be seen in the observation of the court of appeals in *Washington Metropolitan Area Transit Commission*:

> What is fairly contemplated is that tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained.

182 U.S.App.D.C. at 223–24, 559 F.2d, at 844–45. The court of appeals described the appropriate situation for an order maintaining the status quo as one in which

> a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant. There is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical probability of success.

*Id.,* 182 U.S.App.D.C. at 223, 559 F.2d at 844. The case now before this court does not fall within that description since, as the court concluded in its September 14, 1979 opinion, "[i]t is . . . clear if defendants are not enjoined plaintiffs will be irreparably harmed by the transient discomfort and permanent injury caused by medication." 476 F.Supp., at 1311. The court expressly noted in its November 9, 1978 opinion that the use of psychotropic drugs "cause dysfunctions of the central nervous system called extrapyramidal symptoms, as well as other side effects," 462 F.Supp., at 1137–38, including the permanent side effect of tardive dyskinesia, and, in rare cases, sudden death. *Id.* at 1138. Therefore, a decision to stay the enforcement of the court's preliminary injunction would unavoidably inflict significant and, to some extent, irreparable injury on the classes of persons who are to be protected by the court's order.

■ On the other side of the equation, the defendants have also failed to show that they would suffer irreparable injury if the court's order was not stayed pending appeal. The defendants rely upon the affidavit of Ms. Ann Klein, the Commissioner of the New Jersey Department of Human Services and one of the named defendants in this case. She avers:

> Because of . . . budgetary constraints, coupled with the time required to recruit, process in accordance with Department of Civil Service rules and regulations, and train new personnel, the only way the Department of Human Services could comply with the order would be by shifting existing Department or Division of Mental Health and Hospitals personnel and resources from their current spending plan to meet the requirements of the preliminary injunction. These staff will then be unable to perform their ordinary duties which are of critical importance to the operation of the State psychiatric hospitals. On the other hand, if a stay was granted and the judgment of this court affirmed, the Department of Human Services would be able to take the necessary time to recruit, hire and train personnel whose sole function would be to comply with the provisions of the preliminary injunction.

Defendants' Brief, Appendix A, at 2. However, Ms. Klein's statement overlooks two key points. First of all, she neglects to mention that in the three months since the court issued its order on September 14, 1979, she has taken no action to obtain additional funds to cover the costs of implementing the court's decision. Instead she has stated that the only way in which the defendants can comply with the court's order is to totally eliminate the Department of Human Services client advocate program, at the cost of terminating important services rendered to patients in the state's mental institutions. The court does not believe that this proposed course of action exhausts the means of generating sufficient resources to implement the court's order, especially in view of the fact that the defendants have not actively considered any alternatives. Under such circumstances, the court is guided by the statement in *Long v. Robinson,* 432 F.2d 977 (4th Cir. 1970), in which Judge Winter of the Fourth Circuit was called upon to issue a stay of a district court order pending appeal. In that case, the district court had

> declared unconstitutional certain provisions of the Ann.Code of Md., Art. 26, § 51 et seq., and the Charter and Public Local Laws of Baltimore City, Art. 4, § 240, which exempt Baltimore City from the uniform state definition of juvenile age as 18 years. By virtue of these statutes a child in Baltimore City ceases to be a juvenile upon obtaining the age of 16. The age for determining who is a juvenile is important, because juveniles are treated differently from adults when they are charged with a violation of the criminal laws and for other purposes. The order required that all persons between 16 and 18 years of age when arrested (except in the case of alleged capital offenders) who are currently confined in the city jail and other places of incarceration in Baltimore City awaiting trial be released to the juvenile authorities "as expeditiously as possible."

*Id.*, at 978. In considering the allegations of irreparable injury to the moving party if the motion for a stay pending appeal was not granted the court commented:

> I do not minimize the cost, the inconvenience or the burdens which will be placed upon the defendants should they begin compliance with the order. However, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Virginia Petroleum Jobbers Association v. Federal Power Commission* [104 U.S.App.D.C. 106 at 110], 259 F.2d [921] at 925.

*Id.*, at 980. Judge Winter later added:

> Regrettably I must conclude that the principal irreparable injury which defendants claim that they will suffer if the order of the district court is not stayed is injury of their own making. The defendant State of Maryland has postponed the moment of truth as long as possible, but the moment of truth is now at hand. It would seem elementary that a party may not claim equity in his own defaults.

*Id.* Similarly, the defendants cannot rely upon their alleged economic difficulties when they have not sought additional funds which would relieve, or at least reduce, the budgetary strain which they may be experiencing and thereby permit them to comply with the court's order with a minimum of disruption. The second point which Ms. Klein fails to adequately address in her affidavit is the reason for the defendants' request for a stay of the court's preliminary injunction. Ms. Klein refers to the administrative difficulties posed by the order's January 7, 1980 deadline and claims that a stay would "permit the Department of Human Services to more adequately comply with the injunction . . . without at the present time causing a substantial disruption of other essential services to State psychiatric hospital patients." However, the defendants have asked for a stay based upon the time needed to appeal this court's decision, not the time needed for the optimal implementation of the court's order. This significantly undermines the defendants' assertion that a stay is necessary to prevent the premature implementation of the court's order and the unnecessary disruption of the system for the delivery of health care to patients in the New Jersey psychiatric institutions. Moreover, if the defendants were sufficiently alarmed by any problems which may have been created by the court's January 7, 1980 deadline, they should have promptly raised these concerns with the court after it issued its September 14, 1979 order. They should not have waited until now to request a stay. Their tardiness in raising these administrative concerns, when viewed in conjunction with their failure to seek additional funds to underwrite the costs of implementing the court's preliminary injunction, undercuts their allegations of irreparable injuries which would justify a decision to stay this court's prior order.

■ In view of the foregoing analysis, the court must conclude that the defendants have not satisfied their burden of proving that they are entitled to a stay of the court's order pending the disposition of their appeal to the court of appeals. However, defendants have made an additional request which is relevant to the court's consideration of the motion for a stay of its order. They have asked that if this court does deny their motion for a stay pending appeal of its preliminary injunction order of September 14, 1979, that the court at least stay the order long enough to permit its decision on the motion to stay to be reviewed by the court of appeals or a circuit judge. The court has been advised by counsel for defendants that counsel for the plaintiff and intervenors has consented to a delay in the implementation of this court's preliminary injunction order from January 7, 1980 to January 21, 1980. The court believes that the defendants' request for a short postponement of the implementation of the court's order is reasonable, and the parties' agreement is a just compromise which should minimize the burden imposed upon any party by the appellate process. Therefore, the court will grant the defendants' request to delay the implementation of the court's order, with the exception of

the reporting requirements of Part F, until January 21, 1980.

To sum up, the court will deny the defendants' motion for a stay in the enforcement of the court's preliminary injunction order of September 14, 1979, but it will grant the defendants' request to stay the implementation of the court's order until January 21, 1980, with the exception of Part F, which remains in effect.