Molly HOOTCH, minor, by her father and
next friend James Hootch, et
al., Appellants,

v.

ALASKA STATE–OPERATED SCHOOL
SYSTEM, a State Corporation,
et al., Appellees.

No. 2157.

Supreme Court of Alaska.

May 23, 1975.

Christopher R. Cooke, Rice, Hoppner, Blair & Hedland, Bethel, John E. Reese, Alaska Legal Services Corp., Anchorage, and Eric E. Van Loon and Stephen E. Cotton, Center for Law and Ed., Cambridge, Mass., for appellants.

Norman C. Gorsuch, Atty. Gen., and Peter C. Partnow, Asst. Atty. Gen., Juneau, for appellees.

Bertram E. Hirsch, New York City, on brief for the Assn. on American Indian

Affairs, Inc. and the Alaska Federation of Natives, et al. as amici curiae urging reversal.

Joseph N. deRaismes and Daniel P. Sheehan, Boulder, Colo., William H. Jacobs, Anchorage, and Melvin L. Wulf, New York City, on brief for the American Civil Liberties Union as amicus curiae urging reversal.

R. Collin Middleton and Robert H. Wagstaff, Anchorage, for the Alaska Chapter of the American Psychiatric Assn., et al. as amici curiae urging reversal.

## OPINION

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER and FITZGERALD, JJ., and EDMOND W. BURKE, Superior Court Judge.

BOOCHEVER, Justice.

█ This appeal originates from a suit on behalf of 28 Native[1] Alaskans of secondary school age[2] against the Alaska State-Operated School System (hereinafter ASOSS) and certain officials of the Alaska Department of Education. The appeal seeks to compel the State of Alaska to provide secondary schools in appellants' communities of residence.

The named appellants live in the rural western Alaska villages of Emmonak, Kwigillingok and Kongiganak, with populations of 439, 148 and 190 respectively. Each of these villages is inaccessible by automobile. At the time this lawsuit was filed, there were no public secondary schools (encompassing grades 9–12) in these communities. Each appellant had, however, the opportunity to attend school at state expense (including transportation, room and board when away from home) in state-operated regional schools, the state boarding home program or Bureau of Indian Affairs' schools. Participation in state-funded correspondence study was also available. Appellants have attended school in Anchorage, Bethel, Kodiak, Sitka, Unalakleet, Wrangell and Chemawa (Oregon). Since the inception of the suit, the state has established a secondary school in Emmonak as part of its on going program to provide area and local schools.

Appellants' amended complaint in the superior court advanced four claims for relief: Claim I—denial of the right to education contained in Alaska's Constitution,[3]

1. The term "Native" is generally recognized in Alaska to refer to citizens of Aleut, Eskimo and Indian heritage.

2. Appellants styled the suit as a class action, defining the class as persons of secondary school age, Native Alaskans and citizens of the United States and the State of Alaska living in communities where there are no public secondary schools or which lack daily transportation to such schools. Appellants estimate that the class includes 3,000 Alaska Natives living in 145 communities ranging in population from 2,104 (Barrow) to 36 (Igiugig and Rampart). Because there is no accurate data on the number of children not in school, the size of the class is speculative. In superior court, appellees moved to dismiss the claims as to the class. The court did not rule on the motion. Alaska R.Civ.P. 23 which regulates class actions, does not explicitly require a trial judge to determine whether an action may be brought as a class action. The Alaska rule is substantially the same as the original text of Federal Rule of Civil Procedure 23. In 1966, however, the Federal rule was revised to require at least a provisional determination by the trial court on the maintenance of a suit as a class action. We believe that the approach embodied in revised F.R.C.P. 23 is sound. We are also, however, in agreement with the statement of counsel for appellees that determination of the status of this suit as a class action is irrelevant to the legal claim involved in Count I. Thus, absent a determination by the superior court as to maintenance of the suit as a class action under Alaska R.Civ.P. 23, the final judgment is binding solely upon the named appellants. See Carracter v. Morgan, 491 F.2d 458 (4th Cir. 1973). It is, however, appropriate for this court to treat appellants as a class for purposes of this opinion. See, e. g. Maxwell v. Wyman, 458 F.2d 1146 (2d Cir. 1972).

3. Alaska Const. art. VIII, § 1.

statutes [4] and regulations; [5] Claim II—denial of equal protection of the laws by racial discrimination; Claim III—denial of equal protection by geographical discrimination and Claim IV—redress for past discrimination. After discovery was completed, appellants moved for summary judgment on Claim I, arguing that there were no genuine issues of material fact and that the legal framework of education in Alaska guaranteed appellants the right to attend secondary school in their communities of residence.

Superior Court Judge James K. Singleton, Jr. denied appellants' motion for summary judgment on the grounds that neither the constitutional, statutory nor regulatory provisions relied upon by appellants compelled the state to provide secondary education in appellants' communities of residence as a matter of law. Appellees subsequently moved to dismiss Claim I for failure to state a claim upon which relief could be granted. The court treated the motion as one for summary judgment as provided by Alaska R.Civ.P. 12(b) and granted the motion. Thereafter, the superior court severed Claim I from the remainder of appellants' claims pursuant to Alaska R.Civ.P. 54(b) to enable an immediate appeal to this court.

■ Appellants present this court with three arguments in support of their contention that they are entitled to attend secondary schools in their communities of residence.[6] First, they assert that public school attendance is a fundamental right guaranteed to all Alaskan children by art. VII, § 1 of the Alaska Constitution. They continue that the right may not be impaired unless the abridgment is justified by a compelling state interest. Second, they contend that specific regulations promulgated by the Alaska Board of Education require provision of local secondary schools. Finally, appellants maintain that the denial of the opportunity to attend secondary schools in their home communities deprives them of "equal rights, opportunities and protection" in violation of art. I, § 1 of the Alaska Constitution.

## PART I

Provision for education of Alaskan children is governed in the first instance by art. VII, § 1 of the state constitution

---

4. AS 14.03.080(a), AS 14.14.110 and .120 (a).

5. The regulations then in effect, and relied upon by plaintiffs, were 4 AAC 06.020(a) and 4 AAC 06.025(2).

6. In the superior court, appellants also argued that AS 14.14.110(a) and AS 14.14.120 (a) confer upon a student the right to attend secondary school while living at his usual home as long as his community of residence has a "critical mass" of at least eight children eligible to attend elementary and secondary school. AS 14.14.110(a) provides:

   (a) When necessary to provide more efficient or more economical educational services, a district may cooperate or the department may require a district to cooperate with other disrticts, state-operated schools or the Bureau of Indian Affairs in providing educational services or in establishing board and tuition arrangements, arrangements for the exchange of pupils or teachers, or other similar arrangements. *However, if a cooperative arrangement requires pupils to live away from their usual homes, the school board shall provide class-* *es within the attendance area when there are at least eight children eligible to attend elementary and secondary school in the attendance area.* (emphasis added)

AS 14.14.120(a) reads:

   (a) When there are fewer than eight children eligible to attend elementary and secondary school in a district, the school board may declare the district inoperative for that school year.

We agree with the superior court that neither statute requires that a school come into being if a minimum of eight children are eligible to attend.

The portion of AS 14.14.110 referring to eight children is in the nature of a proviso to the remainder of the statute, which deals with cooperation among school districts. This proviso must be strictly construed and not turned into a rule of general application. Application of Babcock, 387 P.2d 694, 696 (Alaska 1963); State v. American Can Co., 362 P.2d 291, 297 (Alaska 1961). AS 14.14.120(a) states when an *existing district* may cease its operations; there is no indication that a *school* need be started where a certain number of potential students are available.

which directs the legislature to establish and maintain a system of public schools. Pursuant to this constitutional mandate, the legislature has enacted Title 14 of the Alaska Statutes. General supervision over the public schools of the state is vested in the Department of Education which is headed by the State Board of Education.[7] Pursuant to AS 14.12.010, operation of the public schools is the responsibility of school districts.

Each home rule city and first-class city outside a borough is a city school district; each organized borough is a borough school district. The vast area outside the city and borough school districts is the state-operated school district.[8] City and borough school districts are under the management and control of local school boards.[9] Selection of school sites within city and borough school districts is, however, the responsibility of the borough assembly or city council.[10]

The state-operated school district is administered by ASOSS, a state corporation.[11] The board of directors of ASOSS is appointed by the governor subject to the requirement of AS 14.08.030 that at least six of the nine members be from rural areas. AS 14.08.090 requires the ASOSS board of directors to

establish, maintain, operate, discontinue, and combine state-operated schools where it considers necessary . . . [and to] pay tuition and boarding or transportation costs of secondary school students in cases in which the establishment of state-operated secondary schools is unsound for economic or educational reasons.

The discretion of the board of directors in carrying out these duties is limited only by the statutory requirement that all ASOSS plans "relating to the establishment, discontinuance, or combining of schools" be approved by the Department of Education before they can be implemented.[12]

Within this systematic scheme, ASOSS and the Department of Education have been endeavoring to devise a workable solution to the problems of educating rural Alaskans. The approach to the problem has shifted several times in recent years with reference to the desirability of smaller schools in rural areas as opposed to larger regional schools.[13]

With this background we turn to appellants' assertion that art. VII, § 1 of the Alaska Constitution establishes a right to secondary schools in their communities of residence. Initially, it is important to maintain the analytic distinction between this and the equal protection arguments. In relying on an art. VII, § 1 right to education, appellants are concerned with the content of the constitutional right to edu-

7. AS 14.07.020(1), AS 14.07.075.

8. AS 14.12.010.

9. AS 14.12.020.

10. AS 14.14.060(d) provides:
The borough assembly shall determine the location of school buildings with due consideration to the recommendations of the borough school board.
AS 14.14.065 provides for analogous procedures.

11. ASOSS was created by AS 14.01.010 et seq. Its operations are financed primarily by state funds appropriated by the legislature. AS 14.12.020(c).

12. AS 14.08.100.

13. Immediately following statehood, the basic concern was to ensure that as few Alaskan children as possible would be required to leave the state for schooling. The primary goals were to provide education within the state and in rural areas wherever possible. See generally the Governor's Committee on Education, "An Overall Education Plan for Rural Alaska", ii–iv (October 1, 1968 rev.). In the mid-1960's, the state contracted with the Training Corporation of America to conduct a feasibility study on size and location of regional schools. Following the direction of that study, the pattern of development of secondary schools involved large regional high schools. See Alaska State Board of Education, "The Big Picture on Small Schools", 1 (1972). In the early 1970's, the emphasis on large regional high schools was re-evaluated. A new policy was adopted favoring local and smaller area schools. Id. at 6, 8, 10.

cation and are seeking enforcement of that specific constitutional right. They are not, as they are in the equal protection arguments, comparing their status with that of other secondary school age children and seeking elimination of any disparities.

Art. VII, § 1 of the Alaska Constitution provides in part:

> The legislature shall by general law establish and maintain a system of public schools open to all children of the State
>
> . . . .

Appellants argue that the words "public schools open to all children of the State" create a right to be educated in their villages.

In denying that the constitution creates such a right, appellees focus on the phrase, "[t]he legislature shall by general law establish and maintain a system of public schools," as the heart of the constitutional provision. They stress that the legislature has complied with the constitutional command by enacting Title 14, by which school location decisions have been properly delegated to borough assemblies, city councils and the board of directors of ASOSS.

■ We have construed art. VII, § 1 on two previous occasions. In Macauley v. Hildebrand,[14] we noted that art. VII, § 1 was a "constitutional mandate for pervasive state authority in the field of education".[15] Then, in Breese v. Smith,[16] a case involving the constitutionality of a junior high school grooming regulation under which a student was suspended because his hair was too long, we stated that "arti-

cle VII, section 1 . . . guarantees all children of Alaska a right to public education".[17] Thus, this court has recognized the dual aspect of the constitutional provision. It imposes a duty upon the state legislature, and it confers upon Alaska school age children a right to education.

We are now called upon to ascertain whether the constitutional right to education includes the right to attend secondary school in one's community of residence. In urging this interpretation upon the court, appellants rely primarily upon the difficulty in exercising the right to education caused by the absence of local secondary schools. They emphasize the word "open" in art. VII, § 1 as the source of the asserted right to local schools. The argument is stated in appellants' brief:

> School attendance by [appellants] is conditioned on their giving up, for many months during this critical period of their development, contacts with their families, their villages, and their cultural heritage. The must live in dormitories or board with strangers in an alien environment hundreds of miles from home. A school for which "tuition" is forfeiture of home and family life . . . cannot be deemed an "open" school.

Appellants seek a definition of the constitutional provision in terms of a particular set of asserted facts. They seek to demonstrate that the right to education includes a right to local secondary schools because the right to education is unduly burdened and rendered hollow without the subsidiary right.

---

14. 491 P.2d 120 (Alaska 1971). In that case, we held that a home rule borough may not, by ordinance, compel its school system to participate in centralized accounting where a state statute required the approval of the school board regarding such matters.

15. 491 P.2d at 122. We went on to say:
   That the legislature has seen fit to delegate certain educational functions to local school boards in order that Alaska schools might be adapted to meet the varying conditions of different localities does not diminish this

constitutionally mandated state control over education.
   *Id.* at 122.

16. 501 P.2d 159 (Alaska 1972).

17. 501 P.2d at 167. Although our opinion in *Breese* was grounded in part upon art. VII, § 1, the primary basis for the decision was that the grant of "liberty" in art. I, § 1 of the Alaska Constitution encompasses the fundamental personal right of students in public schools to select their hair styles without governmental direction, in the absence of a compelling governmental interest.

In determining the scope of a constitutional right, the focus of the court's inquiry is not, however, on the question of whether there is a burden on the exercise of that right. We must look to the intent of the framers of the constitution concerning the nature of the right itself, the problems which they were addressing and the remedies they sought.[18] While prior practice and the framers' purposes are not necessarily conclusive, an historical perspective is essential to an enlightened contemporary interpretation of our constitution.[19]

At the time statehood was attained, a dual system of public education existed in Alaska. The United States Department of the Interior's Bureau of Indian Affairs (hereinafter BIA) operated schools for Alaska Natives; Alaska's Territorial Legislature and Department of Education provided schools attended primarily by non-Natives.[20] The dual system was a vestige of two Federal statutes that were enacted in the early part of this century. Under a 1917 amendment to the Alaska Organic Act, the Territorial Legislature was empowered "to establish and maintain schools for white and colored children and children of mixed blood who lead a civilized life in said Territory. . . ."[21] In the other statute, originally passed in 1905, the Federal Government assumed responsibility for the education of Alaska Natives in the following terms:

> The education of the Eskimos and Indians in the district of Alaska shall remain under the direction and control of the Secretary of the Interior, and schools for and among the Eskimos and Indians of Alaska shall be provided for by an annual appropriation, and the Eskimo and Indian children of Alaska shall have the same right to be admitted to any Indian boarding school as the Indian children in the States or Territories of the United States.[22]

Although efforts were made to unify the two public school systems prior to statehood, these attempts were largely ineffective, principally because the Territory could not assume the financial responsibility for all of Alaska's schools.[23]

The pre-statehood pattern of high school locations, which is reflected in the current system of secondary education, was generated by the dual school system. High schools in incorporated cities enrolled both Native and non-Native students who lived in these populated areas. Secondary education for students living in rural areas of the state was limited or nonexistent. Rural Native students were presented with the choice of either staying at home and foregoing secondary education or leaving home and attending Mt. Edgecumbe, a BIA boarding school established for Native students. When enrollment at Mt. Edgecumbe eventually exceeded the school's capacity, the BIA began admitting Native Alaskans to Indian boarding schools in other states. Hundreds of Alaska Natives entered boarding schools in Chemawa, Oregon and Chilocco, Oklahoma.[24]

The problem of creating a viable, unified system of public education in this state confronted the framers of our constitution when they convened in 1955. In the De-

18. *See* Hunt v. Eddy, 150 Kan. 1, 90 P.2d 747, 751 (1939); Kerby v. Luhrs, 44 Ariz. 208, 36 P.2d 549, 555 (1934); Smith v. St. Paul, M. & M. Ry. Co., 39 Wash. 355, 81 P. 840, 841 (1905); *see also* 16 Am.Jur.2d Con.Law § 65, at 241.

19. *See* Baker v. City of Fairbanks, 471 P.2d 386, 396 (Alaska 1970).

20. *See* Darnell, "Systems of Education for the Alaskan Native Population", in Education in the North 293 (F. Darnell ed. 1972); C. Ray, "Alaskan Native Education: An Historical Perspective", 2–3 (October 1973) (unpublished report prepared for the Alaskan Native Needs Assessment in Education Project).

21. Act of March 3, 1917, ch. 167, 39 Stat. 1131.

22. Act of Jan. 27, 1905, ch. 277, § 7, 33 Stat. 619.

23. C. Ray, note 20, *supra* at 7–12.

24. *Id.* at 17.

cember 15, 1955 Report of the Committee on Preamble and Bill of Rights to the Constitutional Convention, it was suggested that the public education provision of the article on Health, Education and Welfare be adopted in these terms:

> The state shall establish and maintain by general law a system of public schools which shall be open to all children of the state. . . .[25]

The reference to *all* children of the state seems to have been designed to elevate to constitutional status the consensus that Alaska's dual system of education should be ended. The above-quoted provision was referred to the Committee on Style and Drafting, which presented its report to the Convention on January 27, 1956, through Committeeman James Hurley of Palmer:

> MR. HURLEY: . . . The first change from the [original version] embodied the second word . . . which . . . said that the "state" shall do something and we have suggested that the term "legislature" be used in order to pinpoint it to a particular division of the state government. . . . I think there were no changes other than that . . . other than perhaps reversing the order of one or two words. . . .[26]

In view of this history, we conclude that art. VII, § 1 was intended to ensure that the legislature establish a system of education designed to serve children of all racial backgrounds.

Appellants' argument that the source of a right to local schools derives from the word "open" in art. VII, § 1 does not withstand analysis. The general rule in constitutional construction is to give import to every word and make none nugatory.[27] The word "open" in art. VII, § 1 is an integral part of a unitary phrase "open to all". To parse the phrase "open to all" into its component parts and find that each conveys a distinct right goes too far. Section 1 has no meaning with the word "open" deleted. Some word is needed to complete the thought of the section. Inclusion of the word "open" does not appear to impart a different meaning to the section than would "for all", "available to all", or "providing education to all". The phrase "open to all" is a unitary phrase embodying a requirement of nonsegregated schools.

Comparison of the education provision in the Alaska Constitution with those in other states is also instructive in interpreting art. VII, § 1. The phrase "public schools open to all children of the State" in art. VII, §

---

25. 6 Proceedings of the Alaska Constitutional Convention, Appendix V, 68 (Committee Proposal No. 7, December 15, 1955).

26. 5 Proceedings of the Alaska Constitutional Convention 331 (January 27, 1956). Mr. Irwin L. Metcalf raised a question:
   MR. METCALF: Mr. Hurley, I notice the phrase "which shall be" . . . was omitted. Do you think that that dilutes the meaning . . . or not?
   . . . . .
   MR. HURLEY: . . . [I]t is our opinion that it not only was not necessary, but if anything, it probably is stronger now than it was before. We feel that the schools are—that the intent of the group is that the schools be open to all children in the state, and it is not even mandatory, it is something that we expect. It didn't seem

to add anything or subtract anything so we felt it was better to leave it out.
   Thereafter, Mr. Metcalf moved to amend the provision by reinserting the words "which shall be"; the Convention rejected the amendment by voice vote (at 3316). Art. VII, § 1 was then adopted in its present form (at 3320) and later became effective, along with the rest of the Alaska Constitution, on January 3, 1959. Although the Alaska Constitution was ratified by the people of Alaska on April 24, 1956, it did not become effective until January 3, 1959, the day on which President Eisenhower signed the proclamation declaring Alaska a state.

27. State v. Evans, 46 Wash. 219, 89 P. 565, 567 (1907); Lamborn v. Bell, 18 Colo. 346, 32 P. 989, 991 (1893); *see also* 16 Am.Jur. 2d Con.Law § 67, at 245.

1 is rarely found or paraphrased in other state constitutions.[28]

The dissent relies in part on the rather broad dicta found in Logan City School Dist. v. Kowallis.[29] In that case, the Utah Supreme Court was called upon to interpret art. 10, § 1 of their state constitution which like the parallel Alaska provision requires the state legislature to establish a uniform system of public schools "which shall be open to all children of the State." There the Utah court merely held that a child who lives in one school district and chooses to attend school in another may constitutionally be required to pay a nonresident fee, at least in cases where the child had the option to attend a suitable school located in his own district. The court observed that the state constitutional provision required the state to provide all children of the state with schools "as reasonably convenient for attendance as is practicable".[30] Without necessarily embracing that court's construction of its analogous education provision as being applicable to our own, we note only that the Utah court limited its notion of reasonable convenience by the concept of practicability and that what may be practicable in one state may not necessarily be practicable in another state. To the extent the language referred to by the dissent does constitute authority for any broader construction, we find it unpersuasive.

A more typical state constitutional provision is that of Oregon: "The Legislative Assembly shall provide by law for the establishment of a *uniform* and *general* system of Common schools".[31] The word "uniform" found in most state constitutions would seem to prohibit the tailoring of educational programs to different geographic areas or groups in a state. The Arizona

28. A few state constitutions contain language which is similar to the phrase found in the Alaska provision. Art. XII, § 1 of the New Mexico Constitution states that a "uniform system of free public schools sufficient for the education of, and open to, all the children of school age in the state" shall be established and maintained. In addition, both art. VIII, § 147 of the North Dakota Constitution and art. 10, § 1 of the Utah Constitution require their respective legislatures to establish a uniform public educational system which "shall be open to all the children of the state". *See also* Model State Constitution, art. IX, § 9.01 (National Municipal League 6th ed. 1963); Arizona Constitution, art. XI, § 6; and former art. XI, § 7 of the Montana Constitution. Art. X, § 1 of the 1972 Montana Constitution replaced the aforesaid provision, and it no longer contains language similar to the Alaska provision. Similarly, art. 8, § 1 of the Indiana Constitution and art. VIII, § 1 of the South Dakota Constitution require the creation of uniform and general public school systems which are "equally open to all". Finally, a somewhat larger number of state constitutions direct the state legislature to provide for free public education for "all students", "all children" or "all persons" between certain ages residing within the state. *See*, e. g. Ark.Const., art. XIV, § 1; Neb.Const., art. VII, § 6; New York Const., art. XI, § 1; Okl.Const., art. XIII, § 1; Va.Const., art. VIII, § 1; Wash.Const., art. IX, § 1.

The appellants have not cited, nor has independent research revealed, any cases from these or other jurisdictions in which the words "open to all" have been given the construction the appellants urge this court to adopt with regard to art. VII, § 1 of our constitution. Those caes which do interpret this or similar language are distinguishable. *See generally* Logan City School Dist. v. Kowallis, 94 Utah 342, 77 P.2d 348 (1938); Starkey v. Board of Ed. of Davis County, 14 Utah 2d 227, 381 P.2d 718 (1963); State v. School Dist. No. 1 of Fergus County, 136 Mont. 453, 348 P.2d 797 (1960).

As noted *infra*, most state constitutions contain provisions to the effect that the legislature shall establish and maintain a general, thorough, uniform and efficient system of free, common or public schools. *See* Index Digest of State Constitutions, Legislative Drafting Research Fund, at 361–419 (1959). For example, art. IX § 2 of the Washington Constitution reads in part: "The legislature shall provide for a general and uniform system of public schools." *See also* Cal. Const., art. 9, § 5.

29. 94 Utah 342, 77 P.2d 348 (1938). See note 16 of the dissent.

30. 77 P.2d at 351.

31. Oregon Const. art. VIII, § 3 (emphasis added).

Supreme Court, sitting en banc, discussed that state's uniformity clause as follows: [32]

> The present school laws do provide for a system which is statewide and uniform. The minimum length of the school year is provided in the constitution, and the legislature has provided for a means of establishing required courses, qualifications of teachers, textbooks to be used in common schools, and qualifications of professional nonteaching personnel. A. R.S. § 15–102. [33]

■ Unlike most state constitutions, the Constitution of Alaska does not require uniformity in the school system. The phrase "open to all" appears in lieu of the customary uniformity requirements. It seems likely that the drafters of the constitution had in mind the vast expanses of Alaska, its many isolated small communities which lack effective transportation and communication systems, and the diverse culture and heritage of its citizens. [34] Since educational programs may well require special design to confront the divergent problems presented, a uniformity requirement in the Alaska education system might well prove unworkable. Thus, in art. VII, § 1, the Alaska Constitution appears to contemplate different types of educational opportunities including boarding, correspondence and other programs without requiring that all options be available to all students. [35]

The foregoing construction of art. VII, § 1 conforms to the responsiveness of the constitutional convention to the unique problems in the vast rural areas of Alaska. For example, art. X, § 6 created the unor-

ganized boroughs to meet those problems. In discussing the proposed art. X, Mr. Rosswog stated:

> The committee, being from all over Alaska, knowing its problems in the thinly populated areas and in the smaller cities and also in the larger cities, we tried to fit the proposal to each section. . . . [36]

In the debate over art. X, it was recognized that the state would provide different and sometimes lesser services in the unorganized borough than would be provided in the organized boroughs. [37] Provision of educational services in ASOSS without establishing local secondary schools conforms to the constitutional convention's understanding and intent to permit flexibility in the state's provision for services in the unorganized areas. [38]

■ We have previously noted that different approaches are appropriate to meet the educational needs in the diverse areas of the state. In Macauley v. Hildebrand, [39] we approved a legislative enactment designed to ensure that "Alaska schools might be adapted to meet the varying conditions of different localities". [40] The need for flexibility in providing educational services has also been recognized by the United States Supreme Court. In San Antonio Independent School District v. Rodriguez, [41] the Court stated:

> The very complexity of the problems of financing and managing a statewide public school system suggests that "there will be more than one constitutionally permissible method of solving them," and that, within the limits of rationality, "the

32. Shofstall v. Hollins, 110 Ariz. 88, 515 P. 2d 590 (1973).

33. Id. at 592.

34. See Egan v. Hammond, 502 P.2d 856, 865 (Alaska 1972).

35. This interpretation given to art. VII, § 1 in no way implies that classifications and disparities violative of equal protection may be permitted.

36. 4 Proceedings of the Alaska Constitutional Convention 2611 (January 19, 1956).

37. Id. at 2652.

38. Cf. Groh v. Egan, 526 P.2d 863, 875 (Alaska 1974), quoting Egan v. Hammond, 502 P.2d 856, 865 (Alaska 1972).

39. 491 P.2d 120 (Alaska 1971).

40. Id. at 122.

41. 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

legislature's efforts to tackle the problems" should be entitled to respect. (citation omitted).[42]

■ We conclude that art. VII, § 1 permits some differences in the manner of providing education. Reference to the events preceding the ratification of the Alaska Constitution further bolsters our conclusion. The delegates to the constitutional convention were aware that the principal Alaska opposition to statehood was based on arguments that the territory could not afford the costs of a state government.[43] While endeavoring to draft the best possible constitution for the new state, the practical considerations of securing ratification of that document had also to be considered. To have proposed that the new constitution mandate secondary schools in all rural communities having eight school children would have been considered preposterous at that time in view of the grave financial problems which confronted the new state. Moreover, if the delegates had intended that secondary education be provided in each rural community, they certainly would have expressed themselves more directly and clearly than by use of the phrase "open to all".

■ We subscribe to the doctrine that our constitution is not a static document and that its provisions must be construed in light of changing social conditions.[44] Here, however, we are being asked to insert into the constitution a concept not present in the original document and departing so far from its original terms and meaning as to constitute a radical invasion by the judiciary into an area specifically delegated by the very provision in question to the legislature. To do so is beyond our powers.

■ The nonjudicial nature of this problem is emphasized by appellants' concession that the right to local education is not absolute, and that when less than eight school age children reside in a community, the right to attend school locally must yield to the reality that there are too few children present to constitute a school.[45] The decision as to when it is feasible to establish local secondary schools is peculiarly legislative and executive in nature.

■ The question of the desirability of local secondary schools is related not only to the number of students residing in a community, but also to complex policy questions bearing on the quality of education afforded children by small local secondary schools as opposed to larger regional schools[46] or urban schools attended while boarding in private homes. These issues are also inappropriate for judicial resolution.

■ It may well be that the exercise of the right to education is burdened by certain disadvantages. The existence of disadvantages is not, however, tantamount to a violation of the constitutional provision dictating that the right to education be open to all. The contemplation in art. VII, § 1 of some differences in the manner

42. *Id.* at 42, 93 S.Ct. at 1301, 36 L.Ed.2d at 48. In construing art. VII, § 1 of the Alaska Constitution, we are free to give a different construction from that of the United States Supreme Court as long as it is in compliance with minimum standards of the United States Constitution as construed by the United States Supreme Court. Baker v. City of Fairbanks, 471 P.2d 386, 401–02 (Alaska 1970). We are not here confronted with the question presented by the *San Antonio Independent School District* case, and accordingly, our citation of it is not to be construed as passing on the applicability to the Alaska Constitution of its ultimate holding.

43. Claus M. Naske, An Interpretative History of Alaska Statehood, 76, 78, 98, 101, 116, Alaska Northwest Publishing Co.

44. Breese v. Smith, 501 P.2d 159, 169 n. 43 (Alaska 1972); Whitton v. State, 479 P.2d 302, 310 (Alaska 1970); Baker v. City of Fairbanks, 471 P.2d 386, 401–03 (Alaska 1970).

45. If the right to local secondary schools admittedly does not exist when there are less than eight students, we may well ask whether it exists when there are 10, 12 or 40 students.

46. *See* page 799, *supra* as to the shifts that have taken place in education theory with references to the type of secondary schools best suited for rural Alaska.

of providing education sanctions some disadvantages. So long as they are not violative of equal protection, the nature and proper means of overcoming the disadvantages present questions for the legislature.[47] Appellants have been afforded a right to education, although they are not furnished a right to attend secondary schools in their communities of residence. We cannot find this latter right mandated by the constitution, absent a valid equal protection claim.

## PART II

Appellants argued that even if the constitution does not grant them the right to attend local secondary schools, regulations of the State Board of Education provide for such an educational opportunity. In 1972, the State Board of Education, pursuant to its statutory authority, promulgated two Department of Education regulations, 4 AAC 06.020 and 4 AAC 06.025, which were in effect at the time this action was commenced.[48] Section 4 AAC 06.020 provided in pertinent part:

### SECONDARY EDUCATION

(a) Every child of school age shall have the right to a secondary education *in his community of residence, whether in a city district, a borough district, or the state-operated school system.* (b) This section does not apply if a child

(1) has daily access to a secondary school by being transported a reasonable distance; . . . . (emphasis added)

Regulation 4 AAC 06.025 adopted Minimum Standards for *Offering Secondary Education* which described in great detail the village secondary programs to be provided as a function of the enrollment. The Minimum Standards contained the following prefatory comments:

1. Every child of school age shall have the right to an elementary-secondary education in his district or community of residence.

2. No child of school age shall be required to live away from his usual home in order to obtain an education.

Appellants argued below that the regulations were valid and that, as stated in the Department of Education's Notice of Proposed Changes in the Regulations, they "establish[ed] the right of a school age pupil to secondary education in the community of his residence". The superior court considered only the language of 4 AAC 06.020(a). That court found it ambiguous and adopted appellees' view that the phrase "whether in a city district, a borough district or the state-operated school system" was used in apposition to "community of residence". Under this interpretation, the right to education in one's "community of residence" would mean that a student living within the state-operated school district would have the opportunity to attend a school somewhere in the unorganized borough.[49]

47. We note that the legislature in establishing its system of education has made provision for the establishment of local secondary schools.

48. According to appellants, these regulations were promulgated as part of the settlement in Sage v. State Board of Education, C.A. No. 71–1245 (Third Judicial District), a suit by five Kivalina ninth grade students to compel provision of a secondary school in their home village. In November 1971, the Alaska Attorney General in an opinion letter to Dr. Marshall L. Lind, Commissioner of Education, had concluded:

It would be proper under current statutory authority for the Department of Edu-

cation to promulgate uniform regulations setting forth the circumstances in which "schools" must be provided in rural areas of school districts.

· Under court order and relying upon the Attorney General's opinion, the Department of Education developed the regulations to, in the words of an Alaska State Board of Education publication, "reaffirm the right of Alaska school children to be educated in their home communities". "The Big Picture on Small Schools", at 11.

49. The superior court's interpretation rendered the regulations consistent with the precise wording of AS 14.03.080(a), one of the statutory sections cited by the Department of

While this appeal was pending, the State Board of Education repealed 4 AAC 06.025 and repealed and re-enacted 4 AAC 06.-020(a), which now reads in pertinent part:

Every child of school age has the right to a tuition free public education *in his district of residence.* (emphasis added)

The modification of the regulations was prompted, at least in part, by Judge Singleton's ruling in this case.[50] Appellees urge this court not to consider the former regulations because they are no longer in effect. Appellants, on the other hand, cite the repeal of regulations during the pendency of this appeal as evidence of the Board's bad faith and recalcitrant attitude, and suggest that this court is not precluded from ordering relief based on the 1972 regulations.

Under appellants' interpretation of the Department of Education's prior regulations, the state would be required to provide local secondary schools in accordance with the Minimum Standards of 4 AAC 06.025. When 4 AAC 06.025 was repealed, appellants could no longer point to any legal commitment to supply them with the schools they seek.

The alleged loss of benefits does not, however, necessarily establish that the State Board of Education acted arbitrarily in modifying the regulation. An administrative agency may modify or repeal its regulations[51] so long as such action is neither arbitrary nor unreasonable.[52] Therefore, if the State Board of Education's action was not arbitrary or unreasonable, appellants cannot derive from the prior regulations a right to local secondary schools.

In Kelly v. United States Department of Interior,[53] the Secretary of the Interior had deleted a section of his department's regulations which had previously allowed certain Indian claimants to qualify for a share in the distribution of the assets of a dissolved California Indian rancheria. The court held the deletion invalid because the department failed to comply with applicable notice and hearing provisions, but observed that "a change in the regulations resulting in an alleged loss of benefits does not in itself show that the Secretary has acted arbitrarily".[54] We agree with this observation. Nonetheless, to avoid the taint of arbitrariness, the State Board of

Education as authority for the regulations. AS 14.03.080(a) provides:

A child of school age is entitled to attend public school without payment of tuition during the school term *in the school district in which he is a resident* subject to the provisions of AS 14.14.110 and AS 14.14.120. (emphasis added)

50. On November 14, 1973, the State Board of Education unanimously passed the following resolution:

WHEREAS the Superior Court in denying plaintiffs' motion for Summary Judgment on the first count of the *Hootch* case found that 4 AAC 06.020(a) and 4 AAC 06.025 are ambiguous on their face; and

WHEREAS the Superior Court resolved that ambiguity in a manner consistent with the intent which the Board and the Department of Education had when these regulations were originally promulgated; and

WHEREAS leaving these regulations in the Administrative Code in their current ambiguous form may lead to additional confusion,

NOW THEREFORE BE IT RESOLVED that the Department shall proceed forthwith to initiate proceedings to amend these regulations so as to render their language consistent with the above mentioned ruling of the Superior Court and the intent of the Board. . . . .

Pursuant to this resolution and after compliance with the notice and hearing provision of the Alaska Administrative Procedure Act, the regulations were modified in early July 1974.

51. Fraenkel v. United States, 320 F.Supp. 605, 608 (S.D.N.Y.1970); Lawson Milk Co. v. Benson, 187 F.Supp. 66, 74 (N.D.Ohio 1960); Curly's Dairy, Inc. v. State Dep't of Agriculture, 244 Or. 15, 415 P.2d 740, 744 (1966).

52. Nader v. Bork, 366 F.Supp. 104, 108 (D.D.C.1973); Kelly v. United States Dep't of Interior, 339 F.Supp. 1095, 1100 (E.D. Cal.1972); Oil Shale Corp. v. Morton, 370 F.Supp. 108, 123–24 (D.Colo.1973).

53. 339 F.Supp. 1095 (E.D.Cal.1972).

54. *Id.* at 1100.

Education must have a reasonable basis for promulgating the revised regulations.[55]

■■■■■ The Board's stated reason for the revision was to eliminate any ambiguity and to reflect accurately the original intention of the Board.[56] There is nothing arbitrary or unreasonable in modifying a regulation for such a purpose. No facts have been presented to us to justify our disregarding the stated reason for the changes. We therefore hold that the State Board of Education did not act arbitrarily in repealing 4 AAC 06.025 and repealing and re-enacting 4 AAC 06.020(a). It follows that this court cannot grant relief based on regulations that are no longer in effect.[57]

## PART III

The contention is made that appellants are treated differently from other Alaska school children in that they are deprived of the right to attend secondary schools in the communities in which they reside. The majority of Alaska children attend secondary schools without the necessity of living away from home. It is therefore argued that art. I, § 1 of the Alaska Constitution which guarantees to all citizens "equal rights, opportunities and protection" forbids such abridgment of appellants' "fundamental rights unless justified by a compelling state interest".

We are initially confronted by appellees' contention that the equal rights issue is not properly before this court because it was not raised by appellants in Claim I of their complaint or in their memoranda filed with the superior court. We find that appellees are correct insofar as Claim I makes no mention of a violation of the equal rights provision of art. I, § 1. The Alaska constitutional equal rights argument was, however, briefed in connection with the motions for summary judgment on Claim I. Judge Singleton, in his scholarly opinion, did not refer to the equal rights argument either for the reason that the contention was not made a part of Claim I or due to his holding that Alaska's constitutional requirement of a system of education open to all had been met by the legislature and the implication from that holding that no fundamental right to education was violated.

■■■■■ We would normally feel compelled to rule upon the equal rights claim because it was thoroughly briefed in the proceeding before the superior court and

55. In Kelly v. Zamarello, 486 P.2d 906, 911 (Alaska 1970), this court defined the scope of review of administrative regulations as follows:

Thus, where an administrative *regulation* has been adopted in accordance with the procedures set forth in the Administrative Procedure Act, and it appears that the legislature has intended to commit to the agency discretion as to the particular matter that forms the subject of the regulation . . . First, we will ascertain whether the regulation is consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring rule-making authority on the agency. . . . Second, we will determine whether the regulation is reasonable and not arbitrary.

*See also* Kingery v. Chapple, 504 P.2d 831, 835 (Alaska 1972).

56. *See* note 48 *supra.* We note further that the subject matter of the old regulations might be outside the scope of the Depart-

ment of Education's discretion. In order to be valid, an administrative regulation must be directed toward a subject over which the agency has discretion, as delegated by the legislature. AS 44.62.030; Kelly v. Zamarello, 486 P.2d 906, 911 (Alaska 1971). *See also* Boehl v. Sabre Jet Room, Inc., 349 P.2d 585 (Alaska 1960). For example, under 4 AAC 06.025(2), which the State Board of Education has since repealed, secondary facilities would be *required* in villages where there were at least 33 eligible secondary school students. Since school location decisions are committed by statute to borough assemblies [AS 14.14.060(d)], city councils [AS 14.14.065] and the board of directors of ASOSS [AS 14.08.090(12)], the State Board of Education may well have been acting outside the scope of its authority in promulgating 4 AAC 06.025(2).

57. The validity of the present 4 AAC 06.020 (a) is not before us on this appeal, and we decline to pass judgment on this issue.

has been raised in appellants' statement of issues filed herein.[58] Claims directly involving the application of art. I, § 1 of the Alaska Constitution as well as the equal protection clause of the Federal Constitution are, however, still pending in the superior court. Due to the overlapping nature of the claims and the desirability of developing the factual issues normally so vital to resolution of an equal rights claim,[59] we have decided not to rule on the equal rights issues at this time. We prefer that the matter first be determined by the trial court after the presentation of such evidence as may be desirable.

Our disposition of this appeal in this manner is by no means intended to disparage the weighty nature of the claims presented. We have great empathy for the problems of Native people confronted by an alien culture and the Hobson's choice created by the requirement that their children reside away from home in order to further their education. We are heartened by the fact that Alaskans have voted for substantial infusions of funds to provide for local secondary schools in rural areas.[60] We also note that the legislature and State Department of Education have been implementing local secondary school programs actively since the date that this case was filed.[61] Like the trial court, however, we believe that resolution of the complex problems pertaining to the location and

58. We note, however, that this issue was not mentioned in the points on appeal originally filed by appellees. A point omitted from appellants' statement of points on appeal ordinarily will not be considered by this court. Appellate Rule 9(e) provides:

> The appellant shall serve and file with his designation a concise statement of the points on which he intends to rely on the appeal. The court will consider nothing but the points so stated. On motion, and for cause, the statement of points may be supplemented subsequent to the filing of the designation of record.

See Miller v. City of Fairbanks, 509 P.2d 826, 829 (Alaska 1973); Moran v. Holman, 501 P.2d 769, 770 n. 1 (Alaska 1972); Steward v. City of Anchorage, 391 P.2d 730, 732 (Alaska 1964). This rule is often raised in conjunction with the principle that a point appellant has failed to raise in the trial court will not be considered on appeal. Sumner Development Corp. v. Shivers, 517 P.2d 757, 763 (Alaska 1974); Moran v. Holman, 501 P.2d 769, 770 n. 1 (Alaska 1972). We do not find that the record below or the statement of points on appeal, when considered with the statement of issues contained in appellants' brief, fails to inform the opposing parties or the court of the matters in issue. See Steward v. City of Anchorage, 391 P.2d 730, 732 (Alaska 1964); Fairview P.U.D. No. 1 v. City of Anchorage, 368 P.2d 540, 542 (Alaska 1962); cf. Dworkin v. First National Bank of Fairbanks, 444 P.2d 777, 780 (Alaska 1968); Rego v. Decker, 482 P.2d 834, 841 (Alaska 1971).

59. See Milliken v. Bradley, 418 U.S. 717, 744, 94 S.Ct. 3112, 3127, 41 L.Ed.2d 1069, 1091 (1974); Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 172, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627, 637 (1972); Burton v. Wilmington Parking Authority, 365 U.S. 715, 722–23, 81 S.Ct. 856, 860–861, 6 L.Ed.2d 45, 50–51 (1961); Gautreaux v. Chicago Housing Authority, 296 F.Supp. 907 (N.D. Ill.1969), aff'd, 436 F.2d 306 (7th Cir. 1970); King v. Alaska State Housing Authority, 512 P.2d 887, 892 (Alaska 1973); El Cortez Hts. Res. and Prop. Owners Ass'n v. Tucson Housing Auth., 10 Ariz.App. 132, 457 P.2d 294, 295–96 (1969).

60. Prior to the filing of the original complaint in this action, steps had been taken to provide a secondary school at Emmonak and a number of other rural, predominantly Native communities with approximately $20,300,000.00 derived from a bond issue authorized by ch. 170 SLA 1970. An additional $16,000,000.00 was authorized by approval of a second bond issue in 1972 (ch. 195 SLA 1972). Ch. 142 SLA 1974 authorized an additional $40,337,000.00 bond issue for rural school construction which was approved by the voters in November 1974.

61. The sensitivity of the legislature to some of the problems involved in Alaska rural education is illustrated by the enactment of AS 14.08.160 whose preamble expresses considerable concern for the viability of Native language and culture. That preamble sets forth the legislative belief that the educational system in Alaska has a responsibility to provide a bilingual program of education in order to strengthen Native culture, enhance student self-image, improve academic performance, and "allow genuine options for Native Alaskan students in choosing a way of life, and facilitate a more harmonious blending of Native Alaskan culture with the mainstream of society".

quality of secondary education are best determined by the legislative process. We shall not, however, hesitate to intervene if a violation of the constitutional rights to equal treatment under either the Alaska or United States Constitutions is established.[62]

Affirmed and remanded.

ERWIN, J., not participating.

RABINOWITZ, Chief Justice (dissenting).

Article VII, section 1 of the Alaska Constitution provides in pertinent part:

> The legislature shall by general law establish and maintain a system of public schools open to all children of the State
>
> . . . .

I read this constitutional mandate as imposing upon appellees the obligation to supply secondary schools to the rural communities of Alaska.[1] My reasons for differing with the majority's construction of article VII, section 1 are as follows:

Appellants contend that their right to education encompasses the right to attend public secondary school in the communities in which they reside. In support of this argument, appellants emphasize the words "public schools open to all children of the State". The crux of appellants' argument is that the word "open" in article VII, section 1 of the Alaska Constitution means not only free of charge,[2] as conceded by appellees, but also access to a school near the child's home. At present, secondary school age children from rural Alaska villages must, for the most part, travel hundreds of miles to attend school. For example, children from Aniak, a village of 205 persons located eighty air miles from Bethel, attend high school in five different cities: Anchorage, Bethel, Kodiak, McGrath and Palmer. Similarly, seven children from Barrow, population 2104, travel 675 miles to attend secondary school in Tok, population 214. Appellants contend that this pattern violates the constitutional command that schools be "open" to them. The argument is succinctly stated in appellants' brief:

> School attendance by [appellants] is conditioned on their giving up, for many months during this critical period of their development, contacts with their families, their villages, and their cultural heritage. They must live in dormitories or board with strangers in an alien environment hundreds of miles from home. A school for which 'tuition' is forfeiture of home and family life . . . cannot be deemed an 'open' school.

To determine the meaning of article VII, section 1, and particularly the substantive content of the word "open", I agree with the majority that examination of the evolution of public education in Alaska and the

---

62. Additional constitutional arguments have been raised in the briefs of amici curiae which are not treated in this opinion. These arguments were neither briefed nor argued in the court below and are not advanced by appellants in this appeal. It is well settled that courts will not consider issues raised by amici curiae which are not raised by the parties. City of Tempe v. Prudential Ins. Co. of America, 109 Ariz. 429, 510 P.2d 745, 748 (1973); State ex rel. Kvaalen v. Graybill, 159 Mont. 190, 496 P.2d 1127, 1131 (1972); In re Woodward, 14 Utah 2d 336, 384 P.2d 110, 111 (1963); Long v. Odell, 60 Wash.2d 151, 372 P.2d 548, 550 (1962).

1. This court has recognized the dual aspect of article VII, section 1 of Alaska's constitution in our opinions in Breese v. Smith, 501 P.2d 159 (Alaska 1972), and Macauley v. Hildebrand, 491 P.2d 120 (Alaska 1971). As construed in these cases, this provision of Alaska's constitution places a duty upon the State Legislature and, at the same time, it confers upon Alaska school age children a right to education.

2. Under AS 14.03.080(a), a school age child is entitled to attend public school without payment of tuition. For secondary school age students living in the state-operated school district, ASOSS, through its board of directors, must

> pay tuition and boarding or transportation costs of secondary school students in cases in which the establishment of state-operated secondary schools is unsound for economic or educational reasons.

AS 14.08.090(14).

intent of the framers of the Alaska Constitution is apposite. While prior practice and the framers' purposes are not necessarily conclusive,[3] an historical perspective is essential to an enlightened contemporary interpretation of our constitution. I also consider it necessary to evaluate the current operation of Alaska's system of public education in order to ascertain whether it comports with what I view as the command of article VII, section 1 of the Alaska Constitution.

My analysis of essentially the same historical data reviewed by the majority leads me to the conclusion that there exists little guidance in interpreting article VII, section 1, other than certain indications that the provision was intended to make Alaska's public schools available to Native Alaskans on the same terms as non-Native Alaskans.[4] This in turn, raises the question of whether Alaska's system of public education is "open", in the constitutional sense, to appellants.

The delivery of secondary education to the children of the State of Alaska has been shaped by the pre-statehood pattern of high school locations. High schools in incorporated cities enrolled both Native and non-Native students who lived in these populated areas. Secondary education for students living in rural areas of the state was limited or nonexistent. In 1947, the BIA had converted a World War II navy base near Sitka to a boarding high school, called Mt. Edgecumbe, for Native students from rural areas. Rural Native students were presented with the choice of either staying at home and doing without secondary education or leaving home and attending Mt. Edgecumbe. Over the years, Mt. Edgecumbe's enrollment grew, and when enrollment exceeded the school's capacity, the BIA, of necessity, began admitting Native Alaskans to Indian boarding schools in other states. Hundreds of Alaska Natives entered boarding schools in Chemawa, Oregon and Chilocco, Oklahoma.[5]

Immediately following statehood, Alaska educators had two major objectives: namely, to provide public education in rural Alaska, thereby returning the Natives to the state for their secondary education; and to consolidate State schools and BIA schools into a single school system operated by the State of Alaska.[6] It was recognized that the attainment of both objectives would require considerable time and substantial State expenditures,[7] but neither objective has been fully achieved even now, over fifteen years after statehood.

The record before us amply documents the shift in secondary school enrollment of Native Alaskans from BIA-operated, out-of-state boarding schools to schools within Alaska. The State's Boarding Home Program, started in the mid-sixties, allows rural students to board in private homes in Alaska urban areas and attend the local high school. Over a thousand

3. See Baker v. City of Fairbanks, 471 P.2d 386, 396 (Alaska 1970).

4. The proceedings of the Alaska Constitutional Convention do not reveal the source of the language contained in article VII, section 1. Moreover, the convention did not debate the meaning of the word "open".

   It is likely that article VII, section 1 of the Alaska Constitution, which mandates "a system of public schools open to all children of the State", is based on article IX, section 9.01 of the Model State Constitution, which provides for "a system of free public schools open to all children in the state". Similar language is found in article VIII, section 147 of the North Dakota Constitution and article 10, section 1 of the Utah Constitution.

5. C. Ray, Alaskan Native Education: An Historical Perspective 17 (October 1973) (unpublished report prepared for the Alaskan Native Needs Assessment in Education Project).

6. See generally The Governor's Committee on Education, An Overall Education Plan for Rural Alaska ii-iv (October 1, 1968 rev.).

7. Federal funds still support a number of schools in Alaska, even though many former BIA schools have been transferred from federal to State operation. Transitional federal funding has been provided under the terms of the Johnson-O'Malley Act of 1934, as amended. 25 U.S.C. § 452 (1963).

students participated in the program during the 1972–73 school year. In addition, ASOSS has opened three regional secondary schools, in Nome, Kodiak, and Bethel, each of which has boarding facilities, thus enabling several hundred rural students to attend high school closer to their villages.[8] Nonetheless, the fact remains that of the 145 rural communities that appellants' complaint alleged had no secondary schools, or daily transportation to such schools, appellees admit that no secondary programs or facilities are being provided in 108 communities.[9]

Accurate statistics as to the number of secondary school age students who cannot attend school without living away from home are unavailable,[10] but appellants estimate that their class includes 3000 Alaska Natives. Because members of the class reside "more than two miles from either a public school or a route on which transportation is provided by the school authorities",[11] they are not subject to the compulsory school attendance statute.[12] Therefore, a number of appellants do not attend secondary school, although a few have continued their education through correspondence study.[13]

The named appellants, and most of the purported class, reside in the state-operated school district, in which the responsibility for supplying public education rests upon ASOSS. In the answer to appellants' complaint, ASOSS asserts that it is moving to provide secondary school programs in predominantly Native rural communities, but that construction of high school facilities can proceed only after the legislature has authorized issuance of bonds to finance the construction. Robert L. Thomas, Deputy Commissioner of Education, states in his affidavit that it is the current policy of the Alaska Department of Education to establish secondary schools in remote areas "where it is educationally and economically feasible to do so." Thomas' affidavit further avers that

> some 20.3 million dollars from ch. 170 SLA 1970 and another 16 million dollars from ch. 195 SLA 1972 are being spent to provide secondary schools in remote areas.

I think it also appropriate to take judicial notice that at least a portion of the $40.3 million bond issue authorized by the legislature in 1974[14] will be used for rural secondary school construction.

Notwithstanding these expenditures, secondary schools are simply nonexistent in many villages in the immense state-operated school district. Where secondary schools are not provided, the student is given the choice of entering ASOSS's dormitory or boarding home programs or engaging in correspondence study. According to the affidavit of James M. Harper, Director of the Division of Regional Schools and Boarding Home Programs, if a student elects to attend a school administered by ASOSS and indicates no preference for a particular school, ASOSS places the student in the school nearest the stu-

---

8. Alaska State Board of Education, The Big Picture on Small Schools 2 (1972).

9. The 145 communities mentioned in appellants' complaint had the following characteristics: 1.) a predominantly (fifty percent or more) Native population and 2.) more than eight children eligible to attend elementary and secondary school. Appellees' answer claims that secondary programs are being conducted in twenty communities and were scheduled to commence in seventeen others during fiscal year 1974.

10. The answers to interrogatories reveal that ASOSS does not have information concerning the number of school age children living within its district, the number of secondary school age children that are unable to attend school without living away from home, the number of children from its district who attend secondary school away from home, and the number of students who have dropped out of its schools within the past six years.

11. AS 14.30.010(b)(7).

12. AS 14.30.010(a).

13. According to the deposition of Margaret Justice, the total statewide enrollment in the secondary level correspondence program as of June 1973 was only 79 students.

14. Ch. 142 SLA 1974.

dent's community of residence. No student is denied the opportunity to attend a secondary school, and furthermore, when a child leaves his home to attend school elsewhere, all the educational costs, including tuition, transportation, and boarding costs, are paid with public funds.[15]

Appellees state that they are willing to provide secondary education in accordance with article VII, section 1 of the Alaska Constitution, but deny that Alaska's constitution compels them to provide secondary schools in appellants' communities of residence. I disagree.

As I have previously stated, article VII, section 1 of the Alaska Constitution is an explicit directive to the legislature:

> The legislature shall by general law establish and maintain a system of public schools open to all children of the State
>
> . . . .

I fail to see how a public school system can be truly "open" to its students where school is not reasonably accessible to them. The word "open" must be construed not only as meaning free of charge, but also as encompassing a right of reasonable access.[16] I conclude on this record that appel-

lants have been denied reasonable access to secondary schools because they must live away from home throughout the school year in order to attend school. For in my view, article VII section 1 of the Alaska Constitution compels the state of Alaska to provide secondary schools in rural communities, so that, insofar as possible, secondary school age students can have reasonable access to and attend school without living away from home in order to gain an education.

The significance of education in American society was well stated by the United States Supreme Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954):

> Today, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal

---

15. *See* AS 14.08.090(14).

16. Article 10, section 1 of Utah's constitution states that:

> The Legislature shall provide for the establishment and maintenance of a uniform system of public schools, which shall be open to all children of the State, and be free from sectarian control.

Logan City School District v. Kowallis, 94 Utah 342, 77 P.2d 348 (1938) construed the word "open" in the education article of the Utah Constitution. In that case the Supreme Court of Utah said in part:

> . . . The provision is that the system of public schools shall be open to all children of the state. There shall be provided, for each child in the state, a school suitable to its development and training, and as reasonably convenient for attendance as is practicable, which school such child shall have a right to attend. And when the public schools are open to all children on the same and equal terms, compliance has been had with this clause of the Constitution. . . .
>
> . . . . . .

> . . . When their home district provides a school suitable in its curriculum, faculty, and facilities for their stage of educational growth and development, free and open to them, and reasonably convenient for attendance, they are given all the Constitution assures or provides for them.

77 P.2d at 350–51, 353. The *Logan City* case has been cited with approval in Starkey v. Board of Education of Davis County School District, 14 Utah 2d 227, 381 P.2d 718 (1963).

The word "open" also appears in the education articles of the Arizona, Indiana, Montana, New Mexico, and South Dakota constitutions. Article XI, section 6 of the Arizona Constitution and Article XI, section 7 of the Montana Constitution ensure that the schools are "open" to all students "between the ages of six and twenty-one years" while article XII, section 1 of the New Mexico Constitution refers to all "children of school age". Article 8, section 1 of the Indiana Constitution and article VII, section 1 of the South Dakota Constitution employ the phrase "equally open to all".

instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education.[17]

The Supreme Court of the United States recently reaffirmed its statements in *Brown*, "expressing an abiding respect for the vital role of education in a free society".[18] Yet, under Alaska's present system of delivering secondary education, hundreds of eligible students are unable to attend high school and therefore fail to complete their public education. I do not believe that this egregious situation should be perpetuated.[19]

Under article VII, section 1 of the Alaska Constitution, the legislature must establish and maintain "public schools open to all children of the State". In AS 14.03.-070, the legislature has provided in part:

A child . . . who is under the age of 20 and has not completed the 12th grade, is of school age.

This statute reflects the judgment that a child should be permitted to complete the twelfth grade in the public schools. This policy would be effectuated by construing "public schools" in article VII, section 1 as including secondary schools. At minimum, local secondary schools should consist of an appropriate school facility staffed by a qualified instructor.[20] I can see no legal impediment to the utilization of correspon-

17. 347 U.S. at 493, 74 S.Ct. at 691, 98 L.Ed. at 880.

18. *See* San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 29–30, 93 S.Ct. 1278, 1295, 36 L.Ed.2d 16, 41 (1973). The *Rodriguez* Court upheld the Texas school financing scheme, and, in so doing, ruled that education is not a fundamental right for purposes of analysis under the equal protection clause of the Fourteenth Amendment to the United States Constitution. The result in no way detracts from "the grave significance of education both to the individual and to our society". 411 U.S. at 30, 93 S.Ct. at 1295, 36 L.Ed.2d at 41. *Compare* Serrano v. Priest, 5 Cal.3d 584, 96 Cal.Rptr. 601, 615–619, 487 P.2d 1241, 1255–59 (1971) (echoing the United States Supreme Court's sentiments in *Brown* regarding the "fundamental" importance of education).

19. Much of the record points toward evidence of the existing school system's deleterious effects on members of appellants' class. Native students living away from home are often homesick and have difficulties adjusting to boarding schools. Many students in boarding schools have turned to drinking, violence, vandalism, and even suicide attempts. *See* J. Kleinfeld, A Long Way from Home, Effects of Public High Schools on Village Children Away from Home chs. 2–3 (Center for Northern Educational Research & Institute for Social, Economic and Governmental Research 1973). It also may be psychologically damaging to appellants to separate them from their homes during their adolescent developmental period in which "identity formation" takes place. E. Erickson, Childhood and Society

261–62 (2d ed. 1963); Goldstein, Freud & Solnit, Beyond the Best Interests of the Child 19 (1973).

Because of the strains imposed on Native secondary school students away from home, many have dropped out of school. The children in the villages are not in school and are not subject to Alaska's compulsory school attendance statute. AS 14.30.010(b)(7) renders the compulsory attendance statute inapplicable where a child between seven and sixteen years of age

resides more than two miles from either a public school or a route on which transportation is provided by the school authorities . . . . . .

The amicus briefs suggest that appellants have a fundamental right to "cultural integrity", a concept, it is argued, that is closely related to the sanctity of the home and the family. This right is deemed to be encompassed within the right of privacy as derived from either the "penumbras" of the First, Ninth, and Fourteenth Amendments to the United States Constitution or article I, section 1, and article I, section 22 of the Alaska Constitution. *See* Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Breese v. Smith, 501 P.2d 159 (Alaska 1972). In view of my analysis of article VII, section 1 of the Alaska Constitution, I find it unnecessary to discuss this claimed right of "cultural integrity".

20. There should be no implication from this view that regional boarding schools or the

dence course materials, especially for specialized courses, so long as a qualified teacher is available to supervise the correspondence study.[21]

Appellees have advanced three purportedly legitimate justifications for their failure to furnish local secondary schools in appellants' communities: the possible lower quality of instruction in small high schools; the greater cost of providing secondary schools in small, relatively isolated, rural communities; and the need for legislative and administrative discretion in providing public education. None of these justifications can, in my view, defeat the imperative of article VII, section 1 of the Alaska Constitution. Nevertheless, these three state interests merit careful consideration.

While there is some debate regarding the pedagogical efficacy of small high schools, "[t]he small high school program today need no longer be equated with an inferior education."[22] In fact, an Alaska State Board of Education publication, The Big Picture on Small Schools, contains the following observation:

> Advances in educational technology over the past decade have shown that the small secondary school need no longer be considered as a scaled down, limited version of a larger high school. Educational television, programmed texts, and a proliferation of media and materials have made the small high school, in many ways, superior to its large counterpart.[23]

Further, it would be difficult for a system of small, rural high schools to perform more poorly than the present system. Using modest criteria of academic success, Dr. Judith Kleinfeld found that between 67 and 96 percent of the boarding students in her three-part sample "failed".[24] Moreover, provision of high schools in appellants' communities will allow hundreds of potential students, who are now not in school, to resume their education.

Regarding the troublesome issue of the costs of providing appellants with local secondary schools, it is well settled that the state cannot limit or abridge constitutional rights simply as a means of saving money.[25] However, the conclusion that a massive school construction program is required may be at variance with the facts. The Alaska Department of Education's Small Secondary Schools Administrative Manual indicates that

> [i]n many instances, no special or additional school facilities will be required to provide a secondary program at the community level. Existing elementary

---

boarding home program need be abandoned. On the contrary, it may be desirable for a student to leave his village to obtain specialized instruction in a larger or better-equipped high school. My construction does not preclude granting options to rural secondary school age students to attend high schools in other communities.

21. *See, e. g.,* In re Shinn, 195 Cal.App.2d 683, 16 Cal.Rptr. 165 (1961). AS 44.27.020 provides in pertinent part:
The Department of Education shall
(1) administer the state's program of education at the elementary and secondary levels, including . . . correspondence courses . . . .
Although there is a traditional preference for classroom instruction, correspondence courses, when properly supervised, do not fall below the minimum standards of the state's public education program.

22. Alaska State Board of Education, The Big Picture on Small Schools 18 (1972).

23. *Id.* at 17.

24. Dr. Kleinfeld employed the following criteria of "success": that the student (1) stayed in the school or program, (2) did not develop severe or moderately severe school-related social and emotional problems, and (3) gained at least half the expected amount in reading achievement. In the Bethel boarding home program, 96 percent failed; in the Nome boarding school program, 67 percent failed; and in the Anchorage boarding home program, 77 percent failed. *See* J. Kleinfeld, *supra* note 19, at 31, 53, 68.

25. *See, e. g.,* State v. Wylie, 516 P.2d 142, 149 (Alaska 1973); Alvarado v. State, 486 P.2d 891 (Alaska 1971); Baker v. City of Fairbanks, 471 P.2d 386 (Alaska 1970); *accord,* Hosier v. Evans, 314 F.Supp. 316 (D.V.I. 1970) (requiring the Virgin Islands Board of Education to admit all aliens to public schools and declaring that the government must raise the additional funds required).

schools usually can house a few additional pupils (secondary pupils) who desire to continue their education in their home communities.

.    .    .    .    .    .

.  .  .  [Where] additional instruction spaces . . . have to be provided [,] [d]epending on a variety of factors, the additional facilities could be a single classroom adapted to individualized instruction, or it could be more comprehensive and provide for a variety of educational experiences.[26]

Where new school facilities are required, an orderly construction program would be mandated. Once the small, rural high schools are in place, the operating costs for local secondary schools will, in all. likelihood, be less than the comparable per student cost of boarding facilities, primarily because room and board costs will be borne by the student's family.[27]

Appellees have forcefully argued throughout this litigation that under article VII, section 1 of the Alaska Constitution, it is the legislature that is given complete authority to regulate the nature of Alaska's public education system, either directly or through delegated powers.[28] Appellees further argue that since the legislature has not mandated that the public school system include secondary schools in appellants' communities, it is not the proper role of the courts to usurp the legislative prerogative. While I am mindful of the limited judicial expertise in the field of public education, appellees' concept of judicial deference is so broad that, if adopted, it would cause this court to abdicate its constitutional role. Under article IV, section 1 of the Alaska Constitution, the "judicial power" of the State is vested in Alaska's courts. The courts are charged with the solemn responsibility for interpreting and construing Alaska's laws, including our constitution, by which we are all bound. Under Alaska's constitution, as the highest court of the State of Alaska, the Supreme Court of Alaska is the final arbiter of the meaning of Alaska's constitution. Rather than a "radical invasion by the judiciary into an area specifically delegated by" article VII, section 1, to the legislature, I believe and would characterize our task as one of delineation of the constitutional perimeters of the educational .delegation to Alaska's legislature. To illustrate the point, assume that the legislature decreed that all school age children in Alaska must, for nine months a year, attend public schools located only in Fairbanks, Alaska. Is there any doubt that such a legislative enactment is violative of article VII, section 1 of Alaska's constitution?

The legislature, as well as the executive and the judiciary, must operate within constitutional constraints. Thus, upon consideration of the precise language of the Alaska Constitution and the voluminous record in the case at bar, I have concluded that the word "open" in article VII, section 1 contemplates a right of reasonable access on the part of rural secondary school age children to schools in their home communities.[29] To hold otherwise

---

26. Alaska Department of Education, Small Secondary Schools Administrative Manual 20 (1st ed. Sept. 1971).

27. Rough and slightly dated operating cost comparisons showing local high schools to be the least expensive alternative may be found in Alaska State Board of Education, The Big Picture on Small Schools 5 (1972).

28. In Macauley v. Hildebrand, 491 P.2d 120, 122 (Alaska 1971), in another context, this court noted that "no other unit of government shares responsibility or authority", but the "unit" whereof we spoke was the State as opposed to a borough.

29. I agree with the superior court's determination that there are no genuine issues of material fact barring entry of summary judgment on Count I of appellants' complaint. I note my agreement with the majority's disposition of the class action, specific regulations promulgated by the Alaska Board of Education, and the equal protection issues. Further, I think it worth emphasizing that under the majority's opinion it is still open to appellants to pursue their equal protection claims.

results in an interpretation which deprives a significant number of Alaska's school age population of their constitutionally guaranteed right to a public education. It is my belief that a construction which denies Alaska's children reasonable access to public secondary schools renders the provisions of article VII, section 1 of Alaska's constitution illusory.[30]

In reaching the conclusion that the right to education includes a right to local secondary schools under article VII, section 1 of the Alaska Constitution, I wish to emphasize that my construction would not preclude making available alternative methods of education to secondary school age children. My analysis of "open" as employed in article VII, section 1 of the Alaska Constitution does not reflect my adoption of any particular theory of education. For I am fully cognizant that an essential concomitant of reasonable access to public education is the goal of ensuring that Alaska's public education, regardless of where or by what methods it is made available, is of the highest quality.

30. This constitutional right of access is not absolute. The State would have no duty, for example, in the case of a single school age child living in isolation to provide secondary education at the location of his home in the wilderness. Admittedly there are gray areas. Although established villages with currently operational elementary schools would be likely locations for rural secondary schools, the legislature is free to devise reasonable, specific, numerical standards such as that contained in AS 14.14.110(a) which says that

if a cooperative arrangement requires pupils to live away from their usual homes, the school board shall provide classes within the attendance area when there are at least eight children eligible to attend elementary and secondary school in the attendance area.